UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DAMIEAN DEVON TOLSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action Number 3:19-CV-175 |
| | ) | Judge Eli J. Richardson |
| SCOTTIE ROACH, ET AL., | ) | Magistrate Judge Alistair E. Newbern |
| | ) | Jury Demand |
| Defendants. | ) | |

## DEFENDANTS' RESPONSES TO PLAINTIFF'S REQUESTS FOR ADMISSION

Pursuant to Federal Rule of Civil Procedure 36, Defendants Kelsey Carter, Tara Greer Fish ("Fish"), James Harmon ("Harmon"), Scottie Hudson ("Hudson"), Coby Jent ("Jent"), Daisy Navarrette, and Scottie Roach submit their responses to the Requests for Admission propounded by Plaintiff Damiean Devon Tolson ("Tolson").

1. It is well established as a matter of fact that the video footage of the December 13, 2018 incident clearly shows SCO Hudson, the Defendants et al retaliatory behavior(s) and taking advantage of the situation which the Plaintiff is in restraints. Therefore, the Plaintiff was not "aggressive" or resisting in any way at all. . . and order could have easily been restored without that unnecessary use of force.

**RESPONSE:** Admitted that the surveillance video footage from December 13, 2018, shows Tolson assaulting Hudson and security personnel responding in an appropriate manner to stop the assault. Defendants deny the remaining allegations in Request for Admission 1.

2. It is well established as a matter of fact that the Plaintiff was denied food trays for (2) days, bedding for (3) days, and showers for (12) days after the incident with SCO Hudson

claiming that the Plaintiff was a "aggressive and therefore only a [sergeant] or LT, or captain could escort him to the shower or [feed] him."

**RESPONSE:** Defendants deny that it is well established that Tolson did not receive bedding, food, or showers for limited periods of time during his incarceration at the Trousdale Turner Correctional Center ("Trousdale"). Defendants also deny that they retaliated against Tolson for assaulting Hudson or that they denied Tolson bedding, food, or showers in retaliation for assaulting Hudson.

3. It is well established as a matter of fact that the Plaintiff's attorney and Senior Judge Don R. Ash arranged several privileged attorney calls and court teleconference calls that were blatantly rebuffed and dismissed by Tara Greer claiming that the Plaintiff's attorney "provided a non-working phone # twice." However, it is established as a matter of fact that is absurdly false because the Plaintiff's attorney has provided copies of his phone call records and a written statement that contradicts Tara Greer's allegations on all accounts.

**RESPONSE:** Admitted that Fish attempted to help Tolson join certain telephone calls related to legal matters and that, for certain of these telephone calls, the telephone numbers did not work. Defendants deny the remaining allegations in Request for Admission 3.

4. It is well established that the courts have decreed that prison officials must institute classification systems that specifically separate inmates by certain criteria(s) … such as medical restrictions and incompatibles, etc. that warrant separate housing arrangements, [sic] such as the Plaintiff's medical restrictions. It is well established as a matter of fact that the Plaintiff has Class B medical restrictions that strictly prohibit him from climbing any stairs or being forced to be housed on the top tier(s) in any circumstance(s). It is also well established as a matter of fact that

2

Case 3:19-cv-00175   Document 181-1   Filed 04/04/22   Page 2 of 6 PageID #: 1007

the Defendants knew of and were well aware of the Plaintiff's medical needs, but rather blatantly disregarded it and neglect[ed] the proper standard of care.

**RESPONSE:** Admitted that CoreCivic, Inc. ("CoreCivic") classifies inmates who are incarcerated at Trousdale, does not house incompatible inmates together at Trousdale, and medically restricts inmates at Trousdale when warranted. Also admitted that Tolson received a Class B Medical Restriction at some point during his incarceration at Trousdale. Defendants deny the remaining allegations in Request for Admission 4.

5. It is well established as a matter of fact that on 1-11-2019 as the Plaintiff was being physically carried upstairs by SCO Roach and other Defendants – he was simultaneously being forced into AC–206 with [an] aggressive, incompatible "Crip" inmate who threatened the Plaintiff and told these Officials not to come in his cell unless [the Plaintiff] was a "Crip." Yet, these Defendant officials proceeded to physically push the Defendant [sic] into that dangerous situation that they were also well aware of … and disregard a known risk.

**RESPONSE:** Defendants object to this Request for Admission on grounds that the Court dismissed all of Tolson's claims relating to his allegation that he was placed with an incompatible cellmate. Specifically, the Court stated in its Report and Recommendation that:

> Tolson's claims regarding his placement with an incompatible cellmate also fail. Tolson alleges that, despite his status as a close-custody inmate, Roach and Hudson twice forced him to share a cell with Mario Johnson, who was not on close custody. Tolson argues that Hudson and Roach violated Tennessee Department of Correction (TDOC) policy and the Eighth Amendment by requiring inmates of different custody levels to share a cell. Even if it is true that Hudson and Roach's decision violated TDOC policy, as the Court explained in its original screening order, "failure to comply with a state regulation is not itself a constitutional violation." *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992). Tolson has not alleged that housing him with Johnson presented any risk of harm and thus cannot establish that Hudson or Roach were deliberately indifferent to his safety in placing him with Johnson. *See Hugueley v. Haslam*, No. 3:16-cv-02885, 2017 WL 194288, at *5 (M.D. Tenn. Jan. 18, 2017) (finding that plaintiff

3

had failed to plead deliberate indifference claim based on prison officials' choice to house him with incompatible prisoners where he had not alleged that failure "to keep incompatible prisoners separate from one another pose[d] any risk to his safety, let alone a 'substantial risk' . . ."). Accordingly, Tolson has failed to plead an Eighth Amendment claim against Hudson or Roach in their individual capacities based on their decision to house Tolson with Johnson.

(Docket Entry 74 at 17). Subject to and without waiving this objection, Defendants deny the remaining allegations in Request for Admission 5.

6. It is well established as a matter of fact that C/O Jenkins [sic] and C/O Harmon utilized their combined body weight to close the Plaintiff's hands in the food tray flap on 4-20-19 at approx. 4:55am. It is a fact that this violation occurred because it was cited in a grievance by Sgt. L. Cockrill as she viewed it in "milestone surveillance cameras." However, none of this was reported, there is no incident report or any injury report made at all by either C/O Jent or C/O Harmon.

It is well established as a matter of fact that [an] officer is never advised to physically close [an] inmate's hand in a food tray flap as a solution to respond to the inmate refusing to close the food tray flap. Therefore, if an inmate refuses to close the food tray flap, the office should:

1.) Report the T.D.O.C. infraction, and call a superior.
2.) Properly report the injuries in a injury report.

Furthermore, if [an] inmate requests to speak with a higher-ranking officer, a nurse, or has a medical emergency, the C/O must call the higher-ranking officer, a nurse, or medical staff in the pod to respond to the medical emergency. The Plaintiff certainly has [an] inherent right to prompt and adequate medical screening in any injurious situation, and there was no injury report(s) or incident report(s) made of any kind by either C/O Jent or C/O Harmon. The only documentation of this incident was the Plaintiff complaint, the grievance he filed, and [an] extensive 5-1C incident report which the Plaintiff immediately filed after the incident.

4

**RESPONSE:** Admitted that CoreCivic does not train its personnel to unnecessarily use their body weight to trap an inmate's hands in the food tray flap; that when an inmate is sticking his hands through a food tray flap and holding the flap hostage, an inmate first will receive a verbal command to remove his hands from the food tray flap; that in the event an inmate refuses to follow the verbal command to remove his hands from the food trap flap, a corrections officer may need to use some level of force to remove the inmate's hands from the food tray flap to regain control of the inmate and the cell; that inmates at Trousdale receive prompt and appropriate medical treatment; and that CoreCivic has not located an incident report regarding any incident on April 20, 2019, involving Harmon, Jent, and Tolson. Defendants deny the remaining allegations in Request for Admission 6.

Respectfully submitted,

/s/ Erin Palmer Polly
Joseph F. Welborn, III (#15076)
joe.welborn@klgates.com
Erin Palmer Polly (#22221)
erin.polly@klgates.com
Terrence M. McKelvey
terrence.mckelvey@klgates.com
K&L Gates LLP
222 Second Avenue South
Suite 1700
Nashville, Tennessee 37201
(615) 780-6700
(615) 780-6799

*Counsel for Defendants Kelsey Carter, Tara Greer Fish, James Harmon, Scottie Hudson, III, Coby Jent, Daisy Naveret, and Scottie Roach*

**CERTIFICATE OF SERVICE**

      I certify that a true and exact copy of the foregoing has been served via U. S. Mail, first-class postage prepaid, this March 11, 2022, on the following:

Damiean Devon Tolson (#366758)
Riverbend Maximum Security Institution
7475 Cockrill Bend Boulevard
Nashville, Tennessee 37243

                                                                                    */s/ Erin Palmer Polly*