UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DAMIEAN DEVON TOLSON, | |
| Plaintiff, | Case No. 3:19-cv-00175 |
| v. | Judge Eli J. Richardson |
| WARDEN F/N/U WASHBURN et al., | Magistrate Judge Alistair E. Newbern |
| Defendants. | |

## <u>**MEMORANDUM ORDER**</u>

Plaintiff Damiean Devon Tolson has filed three motions related to discovery in this civil rights action, including a motion for six subpoenas (Doc. No. 145) and two motions for spoliation sanctions (Doc. Nos. 166, 167). Defendants Sergeants Scottie Roach and Scottie Hudson III; Correctional Officers Coby Jent, James Harmon, Kelsey Carter, and Daisy Naveret; and Case Manager Tara Greer Fish have responded in opposition to the motions. (Doc. Nos. 151, 170.) For the reasons that follow, Tolson's motions for spoliation sanctions (Doc. Nos. 166, 167) and his motion for six subpoenas (Doc. No. 145) will be denied.

Tolson has also filed a motion for leave to file an eight-page reply brief, but has not identified the motion to which that memorandum corresponds. (Doc. No. 183.) Tolson's proposed reply contains arguments related to the defendants' responses to a request for admission,[1] but appears to be primarily directed at the defendants' response to Tolson's motions for spoliation sanctions (Doc. No. 170). (Doc. No. 184.) Therefore, the Court will construe Tolson's filing (Doc.

---

[1] Tolson's arguments are related to the defendants' response to his first request for admission, which is not the subject of any motion before the Court. Therefore, Tolson's arguments about those responses in his proposed reply (Doc. No. 184) will not be considered.

No. 184) as a proposed reply in support of his motions for spoliation sanctions (Doc. Nos. 166, 167). Tolson does not need the Court's permission to file a reply in support of a pending motion under this Court's Local Rules. M.D. Tenn. Rule 7.01(a)(4) (reply). However, Local Rule 7.01(a)(4) sets a page limit of five pages for a reply brief. *Id.* The Court will grant Tolson's motion to the extent that it seeks permission to file a reply brief that exceeds the prescribed page limit (Doc. No. 183).

## I.       Relevant Background

Tolson initiated this action by filing a form complaint for civil rights actions on February 14, 2019.[2] (Doc. No. 1.) The Court screened Tolson's complaint under 28 U.S.C. § 1915A and found that Tolson had stated colorable claims under § 1983 against Roach and Hudson for violations of Tolson's Eighth Amendment rights and against Hudson for retaliation. (Doc. No. 15.) Tolson then sought to amend his complaint (Doc. Nos. 16, 19, 20), and the Court granted him leave to file an amended complaint by May 2, 2019 (Doc. Nos. 17, 21).

On May 6, 2019, Tolson filed an untimely amended complaint (Doc. No. 23), a motion for an extension of time to file it (Doc. No. 22), and a motion to add defendants (Doc. No. 25). He filed another motion to add defendants on May 9, 2019. (Doc. No. 28.) The Court granted Tolson's

---

[2]      Under the standard governing filings by pro se incarcerated litigants—known as the "prison mailbox rule"—"a pro se prisoner's [pleading] is deemed filed when it is handed over to prison officials for mailing to the court." *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (citing *Richard v. Ray*, 290 F.3d 810, 812–13 (6th Cir. 2002)). Courts assume, "absent contrary evidence," that an incarcerated person delivered a legal filing to prison authorities "on the date he or she signed [it]." *Id.* Because Tolson is incarcerated, all dates for his filings discussed in this Order refer to the dates on which Tolson signed his filings, except for where the Order specifically refers to the date on which the Court received a filing. Tolson signed his original complaint on January 31, 2019, but drafted a cover letter to the Clerk of Court dated and signed February 14, 2019, explaining that he was sending the Court two "completed copies of [his] [§]1983 complaint[.]" (Doc. No. 1, PageID# 13.) The Court therefore finds that Tolson's complaint was handed over to prison officials for mailing on February 14, 2019.

motion for an extension of time and motions to add defendants, giving him until June 4, 2019, to file a revised amended complaint. (Doc. Nos. 27, 38.) Tolson did not file a revised amended complaint by that date and instead filed two more motions to add defendants. (Doc. Nos. 40, 44.) On June 21, 2019, Hudson and Roach filed an answer (Doc. No. 42) to Tolson's May 6, 2019 amended complaint (Doc. No. 23). On July 17, 2019, the Court denied Tolson's motions to add defendants (Doc. Nos. 40, 44) without prejudice and ordered Tolson "to file a comprehensive amended complaint that contains all of his allegations and claims against all defendants he intends to name" by August 7, 2019. (Doc. No. 45, PageID# 307.)

Tolson filed the operative second amended complaint on July 31, 2019. (Doc. No. 46.) The Court screened the second amended complaint under 42 U.S.C. § 1997e(c) and allowed the following claims to proceed:

- Eighth Amendment excessive force claims against Jent and Harmon based on an alleged assault on April 20, 2019, during which Jent and Harmon put their combined weight onto Tolson's hand while it was hanging out of his cell's tray flap;

- an Eighth Amendment deliberate indifference to medical needs claim against Roach based on Roach's decision to place Tolson in an upper-level cell on January 11, 2019, despite a doctor's order prohibiting Tolson from being housed in an upper-level cell or climbing stairs due to a herniated disc in his back;

- an Eighth Amendment deliberate indifference to medical needs claim against Jent based on Jent's failure to obtain medical care for Tolson after Tolson collapsed while climbing the stairs on April 19, 2019, and the April 20, 2019 assault;

- Eighth Amendment conditions of confinement claims against Hudson, Roach, Carter, and Naveret based on deprivations of food and showers; and

- a First Amendment retaliation claim against Hudson based on a physical altercation between Tolson and Hudson on December 13, 2018.

(Doc. Nos. 74, 82.) All of Tolson's other claims have been dismissed. (Doc. No. 82.)

Before the Court screened the second amended complaint, Tolson filed a "motion for discovery" seeking witness testimony and other materials including "the handheld video camera footage of the entire incident on 12-13-18 at approx[imately] 11:30–12:15 p.m."; "camera footage from AC pod on 1-11-19 at approx[imately] 3:30–4:30 p.m[.]"; and "camera footage of AC pod on 4-19-19 at approx[imately] 6:45–7:00 a.m." (Doc. No. 50, PageID# 358–59.) Hudson and Roach construed that filing as a discovery request and responded that providing Tolson with video footage would threaten safety and security; that Tolson's request for footage from January 11, 2019, and April 19, 2019 was "overbroad, unduly burdensome, and seeks materials that are not relevant and are not proportional to the needs of the case"; and that they "do not have materials that are responsive to" Tolson's request for footage from January 11, 2019, and April 19, 2019. (Doc. No. 61-1, PageID# 397, ¶¶ 3, 4.) The Court later denied Tolson's "motion for discovery" as premature because Tolson had not shown that he had sought the information directly from Hudson and Roach through discovery requests before filing the motion. (Doc. No. 55.)

Tolson then filed several other discovery-related motions (Doc. Nos. 59, 60, 63, 65, 67–69), including a motion for subpoenas (Doc. Nos. 63, 65),[3] in which Tolson sought subpoenas for witness testimony and other materials including (1) handheld camera footage taken December 13, 2018, showing "prison officials using unnecessary excessive force while [Tolson] is in restraints"; (2) camera footage from the milestone surveillance cameras in AC pod for January 11, 2019, from 3:30 p.m. to 4:30 p.m., showing "[four] of the defendants physically carrying [Tolson] up stairs against his medical restrictions . . ."; (3) camera footage from the milestone surveillance cameras in AC pod for April 19, 2019 from 6:45 a.m. to 7:00 a.m., showing "[two] of the defendants physically carrying [Tolson] up stairs against his medical restrictions"; and (4) camera footage

---

[3]     The Court received two copies of this motion. (Doc. Nos. 63, 65.)

from the milestone surveillance cameras in AC pod for April 20, 2019, from 4:55 a.m. to 5:10 a.m., showing "[two] of the defendants using unnecessary excessive force of both their body weight combined on the plaintiff's hands in the food tray flap"[4] (Doc. No. 63, PageID# 410–11). In their response to two of Tolson's other discovery motions, Hudson and Roach stated "that they did not have video footage from the AC housing unit from January 11, 2019, from 3:30 p.m. to 4:30 p.m. or video footage from AC housing unit from April 19, 2019, from 6:45 a.m. to 7:00 a.m." but that they "do have video footage from a December 13, 2018" physical altercation between Tolson and Hudson. (Doc. No. 61, PageID# 392.)

After screening Tolson's second amended complaint, the Court denied his discovery motions "without prejudice to refiling now that it is clear which claims are before the Court[,]" finding that "the best course of action is for the parties to confer in an effort to resolve any remaining discovery issues" and providing that, "[i]f they cannot do so, they may seek the Court's intervention." (Doc. No. 86, PageID# 548.) Four days later, Tolson filed a motion for seven subpoenas seeking trial testimony from corrections officer C. Milton, Dr. f/n/u Lane, and former TTCC Warden Jerry Wardlow; handheld camera footage from December 13, 2018; and surveillance camera footage from January 11, April 19, and April 20, 2019. (Doc. No. 88.) Hudson and Roach opposed that motion, arguing again that only the footage from December 13, 2018, had been preserved and that providing the video to Tolson would cause security risks at TTCC. (Doc. No. 89.) Tolson filed a reply (Doc. No. 92) and later filed two motions for sanctions under Federal Rule of Civil Procedure 37 seeking an adverse inference jury instruction because the defendants

---

[4]    Tolson's first and fourth requests describe footage from December 13, 2019, and April 19, 2019 (Doc. Nos. 63, 65), but the Court construes those requests, along with the requests for similar footage in Tolson's other motions, as being for footage from December 13, 2018, and April 20, 2019, the dates on which Tolson alleges that the subject events took place in the second amended complaint (Doc. No. 46).

5

failed to preserve the footage he requested (Doc. No. 124, 125). Carter, Harmon, Hudson, Jent, Naveret, and Roach responded that Tolson's motions for sanctions should be denied because TTCC has a policy of overwriting surveillance video footage approximately ninety days after the footage is recorded and that the footage Tolson requested from January and April 2019 was overwritten according to this policy before the defendants received notice triggering any duty to preserve it. (Doc. No. 126.)

The Court denied Tolson's motion for seven subpoenas without prejudice, finding that, "[t]o the extent that Tolson's motion for seven subpoenas asks the Court to issue subpoenas for trial testimony, th[e] motion is premature." (Doc. No. 139, PageID# 773.) The Court also found that, because "Tolson ha[d] not offered any evidence other than his own argument that the defendants destroyed the surveillance camera footage with a culpable state of mind and not pursuant to their regular record retention practices[,]" he "ha[d] not met the burden of showing that spoliation sanctions are appropriate." (*Id.* at PageID# 776.) The Court also found that Tolson had a right to view the surveillance footage that the defendants had preserved and ordered the defendants "to make the handheld camera footage from December 13, 2018, available to Tolson for viewing . . . ." (*Id.*)

Ten days later, Tolson filed a motion for six subpoenas, again seeking testimony from Milton, Lane, and Wardlow and the January 11, April 19, and April 20, 2019 surveillance footage. (Doc. No. 145.) Carter, Greer. Harmon, Hudson, Jent, Naveret, and Roach respond that, if Tolson seeks to obtain the depositions of Milton, Lane, and Wardlow, he should provide "proof that [he] has secured an appropriate method through which to record the depositions, as required by Federal Rule of Civil Procedure 30(b)(3)" and, to the extent Tolson seeks subpoenas for trial testimony and surveillance footage that has been overwritten, the Court should again deny the motion for the

reasons stated in its prior order. (Doc. No. 151, PageID# 833.) Tolson replies that he seeks subpoenas for trial testimony, that his request is not premature, and that the defendants "should have retained" the video footage he seeks. (Doc. No. 152, PageID# 838.) He also argues that the defendants' response was untimely and his motion for subpoenas should therefore be deemed unopposed. (Doc. No. 152.)

On November 23, 2021, Tolson moved for a telephone conference with the Court, arguing that the defendants had not made the December 13, 2018 video footage available to him as required by the Court's order. (Doc. No. 153.) Carter, Greer, Harmon, Hudson, Jent, Naveret, and Roach responded that, on November 24, 2021, a representative from K&L Gates, the law firm representing the defendants in this action, travelled to Riverbend Maximum Security Institution (RMSI), where Tolson is currently confined, and permitted Tolson to view video footage recorded by a TTCC surveillance camera on December 13, 2018. (Doc. No. 154.) Tolson replied that he had requested "'handheld' video footage" recorded by an unidentified officer on December 13, 2018, not surveillance camera footage from that date (Doc. No. 155, PageID# 850), and filed another request for a telephone conference (Doc. No. 156).

The Court granted that request and held a telephone conference with the parties. (Doc. Nos. 157, 159, 164.) The parties were unable to resolve their dispute in the conference, and the Court granted Tolson leave to file a discovery motion regarding the defendants' production of video footage. (Doc. No. 164.) Tolson filed two motions seeking spoliation sanctions for the defendants' failure to produce handheld camera footage from December 13, 2018, and surveillance camera footage from January 11, April 19, and April 20, 2019. (Doc. Nos. 166, 167.) Tolson argues that the defendants acted with a culpable state of mind in causing the video footage to be lost or destroyed and asks the Court to enter default judgment or order an adverse inference jury

instruction and suppress any trial testimony offered by Hudson, Roach, Jent, and Harmon. (Doc. Nos. 166, 167.) The defendants respond that Tolson's motion should be denied because they did not have an obligation to preserve any of the video footage Tolson has requested and did not destroy the footage with the culpable state of mind required to impose spoliation sanctions. (Doc. No. 170.) In reply, Tolson argues that the handheld video footage he seeks was recorded in accordance with Tennessee Department of Correction (TDOC) policy, was held in the control and custody of CoreCivic,[5] and that the defendants were "reckless[ly] negligen[t]" in not requesting the footage he seeks from CoreCivic as soon as they were served with his complaint in this action. (Doc. No. 184, PageID# 1023.)

## II.     Legal Standard

Federal courts may use "a wide array of tools to manage the discovery process, some provided by the Federal Rules of Civil Procedure, some stemming from their inherent power 'to achieve the orderly and expeditious disposition of cases.'" *EPAC Techs., Inc. v. HarperCollins Christian Publ'g, Inc.*, No. 3:12-cv-00463, 2018 WL 1542040, *10 (M.D. Tenn. Mar. 29, 2018) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1962)), *aff'd as modified*, 2018 WL 3322305 (M.D. Tenn. May 14, 2018); *see also Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001) ("The policy underlying this inherent power of the courts is the need to preserve the integrity of the judicial process in order to retain confidence that the process works to uncover the truth."). Among those tools is the ability to address loss of evidence under certain circumstances. *See EPAC Techs., Inc.*, 2018 WL 1542040, at *15. "Spoliation is the destruction

---

[5]      CoreCivic is a private for-profit corporation that contracts with TDOC to operate TTCC. *See generally Trousdale Turner Correctional Center*, CoreCivic, https://www.corecivic.com/facilities/trousdale-turner-correctional-center (last visited May 8, 2022).

or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Billiter v. SP Plus Corp.*, 329 F. Supp. 3d 459, 465–66 (M.D. Tenn. 2018). "A district court 'may impose many different kinds of sanctions for spoliated evidence, including dismissing a case, granting summary judgment, or instructing a jury that it may infer a fact based on lost or destroyed evidence.'" *Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*, 774 F.3d 1065, 1070 (6th Cir. 2014) (quoting *Automated Sols. Corp. v. Paragon Data Sys., Inc.*, 756 F.3d 504, 513 (6th Cir. 2014)).

The Sixth Circuit has held that a party seeking spoliation sanctions based on destroyed evidence must establish:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Id.* (quoting *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010)).

An obligation to preserve evidence arises when a party knew or "'should have known that the evidence may be relevant to future litigation[.]'" *Beaven*, 622 F.3d at 553 (quoting *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)). This "duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Silvestri*, 271 F.3d at 591 (citing *Kronisch*, 150 F.3d at 126). Whether an actor destroyed records with a culpable state of mind turns "on the alleged spoliator's mental state regarding any obligation to preserve evidence and the subsequent destruction." *Beaven*, 622 F.3d at 553. Where, as here, a party seeks the severe sanctions of default judgment or an adverse inference jury instruction for failure to preserve electronically stored information (ESI), Rule 37(e) requires a finding of specific "intent to deprive another party of the information's use in the litigation . . . ." Fed. R. Civ. P. 37(e)(2);

*see also Black v. Costco Wholesale Corp.*, 542 F. Supp. 3d 750, 752 (M.D. Tenn. 2021) (finding that video surveillance footage is ESI for purposes of determining the availability of sanctions under Rule 37(e)). "A showing of negligence or even gross negligence will not do the trick." *Applebaum v. Target Corp.*, 831 F.3d 740, 745 (6th Cir. 2016). To establish the factor of relevance, "the moving party must make 'some showing indicating that the destroyed evidence would have been relevant to the contested issue.'" *Yoder & Frey Auctioneers, Inc.*, 774 F.3d at 1070 (quoting *Beaven*, 622 F.3d at 554). In this context, relevant means "'something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence.'" *Id.* at 1071 (quoting *Automated Sols. Corp.*, 756 F.3d at 514). "To make this showing, the moving party 'may rely on circumstantial evidence to suggest the contents of destroyed evidence.'" *Id.* (quoting *Beaven*, 622 F.3d at 555).

Courts retain discretion to determine the severity of spoliation sanctions "on a case-by-case basis, depending in part on the spoliating party's level of culpability." *Id.* at 1070 (citing *Flagg v. City of Detroit*, 715 F.3d 165, 178 (6th Cir. 2013)). Because the intentional or negligent destruction of relevant evidence necessarily hinders the jury's ability to decide a case based on a full understanding of the facts, a proper spoliation sanction will "serve both fairness and punitive functions" by "'leveling the evidentiary playing field'" and deterring other litigants from engaging in similar conduct. *Adkins v. Wolever* (*Adkins I*), 554 F.3d 650, 652 (6th Cir. 2009) (quoting *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995)).

## III.     Analysis

### A.     Tolson's Motion for Six Subpoenas

Tolson argues that the Court should not consider the defendants' response in opposition to his motion for six subpoenas because it was filed on October 29, 2021, more than fourteen days after Tolson gave the motion to officials at the Morgan County Correctional Complex (MCCX), where he was then incarcerated, for mailing to the Court and to the defendants. (Doc. No. 152);

*see also* M.D. Tenn. R. 7.01(a)(3) (response) (providing that "any party opposing a motion must serve and file a memorandum of law in response . . . not later than fourteen (14) days after service of the motion" and that "[i]f a timely response is not filed, the motion shall be deemed to be unopposed . . . ."). Because Tolson served the defendants by mail, Federal Rule of Civil Procedure 6(d) adds three days to the period for the defendants to respond. Fed. R. Civ. P. 6(d). Although Tolson certified that he gave his motion to prison staff for mailing to the Court and the defendants on October 4, 2021, the Court did not receive the motion until October 15, 2021. (Doc. No. 145.) The defendants' response was filed fourteen days after Tolson's motion was docketed and, considering the apparent mail delay, the Court considers it to be timely filed.

Tolson seeks three subpoenas for testimony and three subpoenas for video footage. The subpoenas seeking video request footage from the milestone surveillance cameras in TTCC's AC Pod for January 11, 2019, from 3:30 p.m. to 4:30 p.m.; April 19, 2019, from 6:45 a.m. to 7:00 a.m.; and April 20, 2019, from 4:55 a.m. to 5:10 a.m. (Doc. No. 145.) The defendants oppose Tolson's motion because "Tolson has not specified the setting in which he believes that the three individuals who he identified should be required to testify . . . ." (Doc. No. 151, PageID# 833.) They also argue that Tolson's request to subpoena video footage should be denied because the footage Tolson seeks has been automatically overwritten. (Doc. No. 151.) Tolson's reply clarifies "that these subpoenas are only for 'trial testimonies' and/or exhibits of evidence at 'trial.'" (Doc. No. 152, PageID# 837.) Tolson also argues that the defendants had a duty to preserve the video footage he seeks. (Doc. No. 152.)

As the Court explained in an earlier order, Tolson's motions to subpoena witnesses to testify at trial are premature, and "[t]he Court will address the need to subpoena witnesses at the pretrial conference, after the parties have filed their proposed witness lists." (Doc. No. 171.) The

Court will fully address Tolson's requests for video footage in the context of this motion. For those reasons, the motion for subpoenas will be denied.

**B.     Tolson's Motions for Spoliation Sanctions**

Tolson argues that, because the defendants have not produced the handheld video footage recorded on December 13, 2018, or milestone surveillance camera footage recorded on January 11, April 19, and April 20, 2019, the Court should impose spoliation sanctions in the form of default judgment (Doc. No. 166) or an adverse inference jury instruction and partial suppression of testimony by Hudson, Roach, Harmon, and Jent (Doc. No. 167). The defendants have not disputed the relevance of the video footage Tolson requested. (Doc. No. 170.) The Court therefore presumes that the footage would be relevant to Tolson's claims. Because Tolson has not made the required showings regarding the defendants' duty to preserve the footage and culpable state of mind, his motions for sanctions will be denied.

**1.     Handheld Video Footage Recorded on December 13, 2018**

The defendants do not dispute that footage recorded on December 13, 2018, by the milestone surveillance cameras shows an individual who "appears to be holding what could be a recording device . . . ." (Doc. No. 170, PageID# 942.) However, after "repeatedly" requesting "any handheld camera footage" from CoreCivic, the defendants "have been unable to locate any such handheld camera footage." (*Id.*) Tolson argues that the footage was recorded by "a John Doe officer" (Doc. No. 166, PageID# 895; Doc. No. 167, PageID# 910), and that "T.D.O.C. protocol" "requires corrections officers to utilize [a] 'handheld camcorder'" when "any incident" occurs "at any T.D.O.C. facility . . . ." (Doc. No. 184, PageID# 1021.) Tolson has not identified the TDOC policy he describes, nor has the Court identified any policy to that effect in TDOC's publicly available policies and procedures. Tolson's assertion that an unidentified officer created a recording of an altercation between Tolson and Hudson on December 13, 2018, is insufficient to

show that any of the defendants had control over the recording, had an obligation to preserve it, or caused it to be lost or destroyed with a culpable state of mind. *See Yoder & Frey Auctioneers, Inc.*, 774 F.3d at 1070. Therefore, Tolson has not shown that spoliation sanctions are warranted with respect to his request for handheld video footage recorded on December 13, 2018.

Default judgment also is not appropriate. Rule 37(b) authorizes the Court to enter default judgment when a party has not obeyed a court "order to provide or permit discovery[.]" Fed. R. Civ. P. 37(b)(2)(A). The Court ordered the defendants "to make the handheld camera footage from December 13, 2018, available to Tolson for viewing" (Doc. No. 139, PageID# 776). However, it was not apparent to any party or the Court until after Tolson viewed the preserved footage from December 13, 2018, that the handheld footage Tolson seeks is not the surveillance footage the defendants preserved (Doc. No. 154). The defendants complied with the order to make the December 13, 2018 footage that was in their control available to Tolson for viewing, and Tolson is not entitled to default judgment under Rule 37(b).

### 2. Milestone Surveillance Camera Footage Recorded on January 11, April 19, and April 20, 2019

In the first amended complaint that was filed on May 6, 2019, and received by the Court on May 13, 2019, [6] Tolson alleges that Hudson and Roach carried him up a set of stairs against his medical restrictions on January 11, 2019. (Doc. No. 23.) Hudson was served with process on May 13, 2019 (Doc. No. 36); Roach was served on May 17, 2019 (Doc. No. 35); and counsel entered an appearance on those defendants' behalf on May 21, 2019 (Doc. Nos. 30–32). Under

---

[6] In his original pleadings, Tolson alleged that Hudson and Roach improperly changed his security classification and forced him to move to a new housing assignment on January 11, 2019. (Doc. No. 2, PageID# 20.) In screening Tolson's original complaint, the Court found that these allegations were insufficient to state a claim on which relief could be granted. (Doc. No. 14.) Therefore, the allegations in Tolson's original pleadings, which were served on Hudson and Roach after they were screened, would not have placed them on notice that surveillance footage of the AC pod recorded January 11, 2019, would be relevant to any claim against them.

CoreCivic's 90-day retention policy, the surveillance footage recorded on January 11, 2019, would have been overwritten around April 11, 2019—before these defendants and their counsel had notice of the claims against them. Tolson has not shown that any of the defendants had notice that the January 11, 2019 footage would be relevant to future litigation before that date. The record does not contain any evidence showing that, at the time of destruction, the defendants knew or should have known that the January 11, 2019 surveillance footage "'may be relevant to future litigation[.]'" *Beaven*, 622 F.3d at 553 (quoting *Kronisch*, 150 F.3d at 126). Therefore, Tolson has not shown that the defendants had a duty to preserve the January 11, 2019 security footage and he is not entitled to spoliation sanctions related to his request for that footage.

Tolson also alleges in the first amended complaint that he collapsed while climbing the stairs to his cell on April 19, 2019, but "the defendants just picked him up and carried him back upstairs to his cell." (Doc. No. 23, PageID# 139.) The first amended complaint also states that Jent and Harmon trapped Tolson's hands in his cell's tray flap on the morning of April 20, 2019. (Doc. No. 23.) Hudson and Roach answered Tolson's first amended complaint on June 21, 2019. (Doc. No. 42.) Under CoreCivic's 90-day retention policy, the surveillance footage recorded on April 19 and 20, 2019, would have been overwritten around July 18 and 19, 2019, after Hudson and Roach had received notice of and responded to the allegations in Tolson's first amended complaint. But, even if Hudson and Roach received notice that surveillance footage recorded in April 2019 could be relevant to this litigation before the footage was destroyed, *see John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008) (quoting *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d, 423 436 (2d Cir. 2001)), Tolson has not offered any evidence other than his own statements "that the defendants had absolute control and custody of th[e] footage and its contents" (Doc. No. 166, PageID# 900; Doc. No. 167, PageID# 915). Based on the evidence in the record, the Court cannot conclude that

Hudson and Roach, or any other defendant, had sufficient control of the surveillance footage Tolson seeks to warrant spoliation sanctions for failing to preserve it. *See Miller v. City of Springfield Police Div.*, 3:19-cv-145, 2021 WL 2688555, at *5 (S.D. Ohio June 30, 2021) (denying motion for spoliation sanctions with prejudice based in part on plaintiff's failure to "offer[ ] [any]thing to suggest that" the defendants, rather than higher-ranking officials of their employer, controlled the surveillance footage plaintiff "claim[ed] [wa]s missing").

Further, even if Tolson could show that these defendants had sufficient control over the requested video footage to impose a duty to preserve it under Rule 37(e), he has not shown that any defendant had the culpable state of mind necessary to impose the severe sanctions he seeks. Rule 37(e) requires a specific "intent to deprive another party of the information's use in the litigation" before the severe sanctions of a default judgment or an adverse instruction are warranted. Fed. R. Civ. P. 37(e)(2). Tolson asks the Court to infer such intent from the fact of the surveillance footage's unavailability, arguing that failure to preserve the footage was "'likely done out of fear that the evidence would be harmful to [the defendants].'" (Doc. Nos. 166, PageID# 896; Doc. No. 167, PageID# 911 (quoting *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 520 (D.N.J. 2008)).) The language Tolson quotes from *Kounelis* describes the "'common sense'" reasoning underlying spoliation sanctions. *Kounelis*, 529 F. Supp. 2d at 520 (quoting *Mosaid Techs., Inc. v. Samsung Elecs. Co.*, 348 F. Supp. 2d 332, 336 (D.N.J. 2004)). But that case goes on to cite the Second Circuit's four-factor test for imposing such sanctions—which includes a finding of "'actual suppression or withholding of the evidence'" similar to the Sixth Circuit's culpability factor—and notes that the Magistrate Judge found all four factors to have been met. *Id.* (quoting *Mosaid Techs., Inc.*, 348 F. Supp. 2d at 336).

Similarly, to impose sanctions, this Court must find that the evidence at issue was destroyed by the defendants acting with a culpable state of mind rather than through CoreCivic's routine record retention practices. *See Miller*, 2021 WL 2688555, at *6 (denying motion for spoliation sanctions where plaintiff did not present evidence to contradict defendants' assertion that surveillance footage "would have been erased automatically as a product of . . . routine re-recording practice"); *Adkins v. Wolever*, 692 F.3d 499, 506 (6th Cir. 2012) (*Adkins II*) (affirming district court's finding that prison official did not act with culpable state of mind in failing to preserve surveillance video and holding that courts must "consider incidences raising spoliation questions on a case-by-case basis" rather than adopting a bright-line rule regarding the retention of prison surveillance footage). Tolson's motion and supporting filings do not support that conclusion. Because Tolson has not met the burden of showing that spoliation sanctions are appropriate, his motions for sanctions will be denied.

## IV.     Conclusion

For the foregoing reasons, Tolson's motion for leave to file an eight-page reply memorandum (Doc. No. 183) is GRANTED. The Clerk's Office is DIRECTED to docket the filing (Doc. No. 184) as a reply in support of Docket Entries 166 and 167.

Tolson's motions for default judgment (Doc. No. 166) and for an adverse inference jury instruction and partial suppression of four defendants' testimony (Doc. No. 167) are DENIED.

Tolson's motion for six subpoenas is DENIED WITHOUT PREJUDICE as to the subpoenas seeking trial testimony and WITH PREJUDICE as to the subpoenas seeking video footage (Doc. No. 145).

It is so ORDERED.

ALISTAIR E. NEWBERN
United States Magistrate Judge