UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DAMIEAN DEVON TOLSON, | |
| Plaintiff, | Case No. 3:19-cv-00175 |
| v. | Judge Eli J. Richardson |
| | Magistrate Judge Alistair E. Newbern |
| WARDEN F/N/U WASHBURN et al., | |
| Defendants. | |

To:     The Honorable Eli J. Richardson, District Judge

## REPORT AND RECOMMENDATION

This civil rights action brought under 42 U.S.C. § 1983 addresses pro se Plaintiff Damiean Devon Tolson's incarceration at the Trousdale Turner Correctional Center (TTCC) in Hartsville, Tennessee, which is operated by CoreCivic, Inc.[1] (Doc. No. 46.) Tolson's amended complaint asserts violations of his rights under the First, Sixth, and Eighth Amendments to the United States Constitution based on allegations that: (1) Defendant Scottie Hudson, III, attacked Tolson in retaliation for Tolson challenging a disciplinary write up; (2) Hudson and Defendants Sergeant Scottie Roach and Correctional Officers Kelsey Carter and Daisy Navarrette deprived Tolson of bedding, food, and showers while he was in restrictive housing; (3) Defendant Case Manager Tara Greer Fish prevented Tolson from speaking to his criminal defense attorney; (4) Roach intentionally placed Tolson in an upstairs cell despite knowing that Tolson was medically restricted

---

[1]     CoreCivic, Inc., is a private for-profit corporation that contracts with the Tennessee Department of Correction (TDOC) to operate TTCC. *See generally* Trousdale Turner Correctional Center, https://www.corecivic.com/facilities/trousdale-turner-correctional-center (last visited Dec. 6, 2022).

to lower-level cells; (5) Defendant Correctional Officer Coby Jent denied Tolson medical care; and (6) Jent and Defendant Correctional Officer James Harmon used excessive force against Tolson, injuring his hands and wrists. (*Id.*)

Tolson has filed two motions for summary judgment (Doc. Nos. 172, 185) that are accompanied by statements of undisputed material facts (Doc. Nos. 173, 186). Tolson did not file legal memoranda or exhibits to support his motions. The defendants responded in opposition to Tolson's motions. (Doc. No. 189.) In support of their response, the defendants filed declarations from Carter, Greer Fish, Harmon, Hudson, Jent, TTCC Grievance Coordinator Elizabeth Lopez, Navarette, and Roach. (Doc. Nos. 190–197.) The defendants also provided the TDOC grievance policy and four grievances filed by Tolson in 2019. (Doc. Nos. 195-1–195-5.) Tolson did not file optional replies.

The defendants, in turn, filed a motion for summary judgment (Doc. No. 201) supported by a memorandum of law (Doc. No. 202) and a statement of undisputed material facts (Doc. No. 203). The defendants also relied upon the exhibits to their response to Tolson's motion to support their motion for summary judgment. (Doc. Nos. 190–97.) Tolson responded in opposition to the defendants' motion (Doc. No. 206), but did not separately respond to the defendants' statement of undisputed material facts or provide supporting exhibits. The defendants filed a reply. (Doc. No. 207.)

For the reasons that follow, the Magistrate Judge will recommend that Tolson's motions for summary judgment be denied and the defendants' motion for summary judgment be granted.

## I.  Background

### A.  Tolson's Claims

Tolson initiated this action on January 31, 2019, by filing a complaint bringing claims under 42 U.S.C. § 1983.[2] (Doc. No. 1.) Tolson then repeatedly sought to amend his complaint to add new defendants and allegations. (Doc. Nos. 16, 19, 20, 22, 25, 28, 40, 44.) Ultimately, the Court ordered Tolson to file an amended complaint that "contains all of his allegations and claims against all defendants he intends to name." (Doc. No. 45, PageID# 307.) The amended complaint that Tolson filed in response is the operative pleading (Doc. No. 46) and, because Tolson has not provided other evidence in support of his motions for summary judgment, the following allegations regarding Tolson's claims are taken from that pleading.[3] Facts supporting the defendants' motion are taken from their summary judgment filings as noted.

---

[2]     Under the "prison mailbox rule[,] . . . a pro se prisoner's [pleading] is deemed filed when it is handed over to prison officials for mailing to the court." *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (citing *Richard v. Ray*, 290 F.3d 810, 812–13 (6th Cir. 2002)). The rationale for this rule is that "pro se prisoners have no control over delays between the prison authorities' receipt of [a pleading] and its filing, and their lack of freedom bars them from delivering the notice to the court clerk personally." *Houston v. Lack*, 487 U.S. 266, 273–74 (1988) (emphasis in original). The Supreme Court first applied this rule to notices of appeal, *see id.*, and lower courts have extended its application to habeas corpus petitions, civil complaints, motions, and responsive briefs. *Vandiver v. Corr. Med. Servs., Inc.*, No. 05-CV-72835, 2006 WL 2516902, at *1 (E.D. Mich. Aug. 29, 2006) (discussing history of prison mailbox rule and applying it to pro se plaintiff's response in opposition to motion for summary judgment); *see also Lyons–Bey v. Pennell*, 93 F. App'x 732, 733–34 (6th Cir. 2004) (applying prison mailbox rule to response in opposition to motion to dismiss). Courts applying the prison mailbox rule assume, "absent contrary evidence," that an incarcerated person handed over a pleading to prison authorities "on the date he or she signed [it]." *Brand*, 526 F.3d at 925. Tolson signed his complaint on January 31, 2019. (Doc. No. 1.)

[3]     Tolson's amended complaint is not verified and cannot be considered as evidence in support of his summary judgment motions or in opposition to the defendants' motion. *See Burley v. Sumner Cnty. 18th Jud. Drug Task Force*, No. 3:19-cv-00118, 2021 WL 852194, at *4 (M.D. Tenn. Feb. 17, 2021), *report and recommendation adopted by* 2021 WL 848714 (M.D. Tenn. Mar. 5, 2021). The Court includes Tolson's allegations to provide relevant context for the issues raised by the summary judgment motions.

In the amended complaint, Tolson alleges that, after arriving at TTCC in November 2018, he was placed in restrictive housing (or segregation) and written up for defiance. (*Id.*) Tolson claims that, after the defiance charge was dismissed as unsubstantiated, prison officials began retaliating against him by keeping him housed in restrictive housing and depriving him of recreation, telephone privileges, and access to legal assistance. (*Id.*) Tolson was released from restrictive housing on December 13, 2018. (*Id.*) Tolson alleges that, as he was leaving restrictive housing, Hudson cursed at him, referencing the dismissed disciplinary write-up, and physically

---

It appears that Tolson attempted to verify his response to the defendants' motion for summary judgment. (Doc. No. 206.) That document includes the statements "VERIFICATION UNDER OATH SUBJECT TO PENALTY FOR PERJURY AND SELF NOTARIZATION" and "[t]his document is being signed in accordance with 28 U.S.C.A. § 1746." (*Id.* at PageID# 1231.) Although Tolson references the statute that establishes the ability to make unsworn declarations under penalty of perjury, the language Tolson includes in his statement is not sufficient to invoke that statute. Section 1746 requires the use of language "in substantially the following form: . . . 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature).'" 28 U.S.C. § 1746(2). Two statements are essential: "'(i) an assertion that the facts are true and correct; and (ii) an averment that the first assertion is made under penalty of perjury.'" *Myers v. Transcor Am., LLC*, Civ. No. 3:08-295, 2010 WL 3824083, at *9 (M.D. Tenn. Sept. 30, 2010) (finding that pro se plaintiffs' statement did not meet § 1746 requirements because it lacked "under penalty of perjury" language). Tolson does not include the required assertion that the facts of his filing are true and correct. *See, e.g.*, *Bell v. Michigan*, No. 1:19-cv-233, 2022 WL 16733015, at *5 (W.D. Mich. Aug. 22, 2022) (finding that language that did not include unqualified declaration that statements were "true and correct" did not meet statutory requirements), *report and recommendation adopted by* 2022 WL 5426549 (W.D. Mich. Oct. 7, 2022); *Smith v. Washington*, No. 1:17-cv-285, 2018 WL 6981149, at *2 n.2 (W.D. Mich. Dec. 4, 2018) (finding that plaintiff's failure to declare without qualification that statements were "true and correct" meant that document did not comply with 28 U.S.C. § 1746(2)), *report and recommendation adopted by* 2019 WL 131997 (W.D. Mich. Jan. 8, 2019).

More importantly, the filing that Tolson attempted to verify—his response in opposition to the defendants' motion—is not the type of document that can be considered evidence supporting a party's summary judgment argument. *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]") Tolson's responsive brief is argument, not evidence. Thus, even if he had properly verified that document, the Court would not consider it as record evidence at summary judgment

assaulted him. (*Id.*) Tolson states that other officers joined in the attack and returned him to restrictive housing. (*Id.*) Tolson alleges that, after these events, Carter and Navarrette, acting on orders from Roach and Hudson, deprived him of access to his personal property for thirty days, showers for twelve days, appropriate bedding for three days, and food for two days. (*Id.*)

At summary judgment, Hudson asserts that, on December 13, 2018, Tolson entered Hudson's office and, unprovoked, began punching him. (Doc. No. 203.) Hudson states by declaration that he attempted to defend himself against Tolson's attack and that the altercation spilled out of Hudson's office and into the hallway. (Doc. No. 193.) The TTCC Special Operations Response Team was called and restrained Tolson. (*Id.*) Tolson was then returned to restrictive housing. (Doc. Nos. 190, 193, 196, 197, 203.) The defendants assert that Carter, Hudson, Navarrette, and Roach did not deprive Tolson of bedding, food, or showers while he was in restrictive housing and did not retaliate against Tolson in any way for the December 13, 2018 attack on Hudson. (Doc. No. 203.) They further assert that Hudson and Roach did not instruct or encourage any CoreCivic employees to deprive Tolson of bedding, food, or showers while he was in restrictive housing. (*Id.*)

Tolson alleges several other violations in the amended complaint.

Tolson claims that he missed calls with his criminal defense attorney twice in January 2019 because Greer Fish falsely claimed that Tolson's attorney had given her a non-working number to use when placing the call. (Doc. No. 46.) Greer Fish served as a case manager in the TTCC restrictive housing unit during Tolson's incarceration. (Doc. No. 191.) At summary judgment, Greer Fish states by declaration that she was responsible for coordinating telephone calls for people in that unit. (*Id.*) If someone in restrictive housing was scheduled to have a telephone call with their attorney or the court, the warden's secretary emailed Greer Fish the date and time of the

5

call and the telephone number to dial. (*Id.*) Greer Fish then coordinated with the restrictive housing unit security team to escort the person scheduled for a call to the telephone at the appointed time. (*Id.*) Greer Fish placed the call by dialing the telephone number that the warden's secretary had given her. (*Id.*) If the telephone number did not work, Greer Fish would contact the warden's secretary to confirm that the telephone number she dialed matched the number given to the warden's secretary. (*Id.*)

Greer Fish states by declaration that she coordinated telephone calls for Tolson with an attorney or a court on two occasions. (*Id.*) On the first occasion, she dialed the number provided to her multiple times but the calls went straight to voicemail. (*Id.*) Greer Fish contacted the warden's secretary, who confirmed that the phone number she used was correct. (*Id.*) On the second occasion, Greer Fish dialed the number provided to her but the call did not connect. (*Id.*) Again, she confirmed with the warden's secretary that she had the correct number. (*Id.*) Greer Fish asserts that she "never falsely stated that a telephone number was invalid in order to prevent Tolson from participating in scheduled calls with his attorney or the court." (Doc. No. 203, PageID# 1221, ¶ 17.)

Tolson alleges that Roach moved him to an upstairs cell in violation of Tolson's Class B medical restriction requiring him to be housed on the ground level because of a herniated disc that prevents him from climbing stairs. (Doc. No. 46.) Tolson states that he collapsed while climbing the stairs to his cell after Roach moved him to the upper level. (*Id.*) Tolson alleges that he asked Jent for medical assistance after collapsing, including being returned to a first-floor cell, but Jent did not provide it. (*Id.*) Tolson alleges that, when Jent delivered breakfast to his cell on the morning after he collapsed, Tolson was in "obvious pain" and again asked Jent for emergency medical assistance. (*Id.* at PageID# 329.) Tolson states that his left hand was hanging over the food port in

his cell door during this interaction. (Doc. No. 46.) He states that Harmon joined Jent at his cell, and the two officers put all of their combined body weight on Tolson's left hand. (*Id.*) When Tolson used his right hand to try to relieve the pressure, it also became trapped. (*Id.*) Tolson states that he suffered visible injuries to his hands and wrists and that Jent promised to get him medical assistance but did not. (*Id.*)

At summary judgment, the defendants do not dispute "that Tolson received a Class B Medical Restriction at some point during his incarceration at [TTCC]" (Doc. No. 180-1, PageID# 998, ¶ 4), and Tolson has submitted records showing that the restriction included a requirement that he be assigned to a cell on the first floor and given a bottom bunk because of orthopedic problems (Doc. No. 23-1). Roach states that he was not aware of Tolson's medical restrictions and did not have authority to assign people incarcerated at TTCC to any particular housing unit or cell or to change their housing unit or cell assignment. (Doc. No. 203.) Roach states that, if he had been aware that Tolson was required to be housed in a cell on the first floor, he would have reported that information to the unit manager and requested that Tolson's cell assignment be updated. (Doc. No. 197.) Jent states that he did not have any direct involvement in the medical treatment that Tolson received during his incarceration at TTCC and did not deny Tolson access to medical care. (Doc. No. 203.)

Jent and Harmon also state by declaration that, on April 20, 2019, Jent placed food trays in the food port of Tolson's cell while delivering breakfast to Tolson's unit. (Doc. Nos. 192, 194.) They state that Tolson then used the food trays to block Jent from closing the food port. (Doc. Nos. 192, 194.) Jent and Harmon state that this created a security risk and that Tolson refused to follow verbal commands to remove the block. (Doc. No. 203.) They state that, in accordance with CoreCivic policies, they would use only force after an incarcerated person did not follow their

verbal commands and would only use the force necessary to correct the behavior. (Doc. Nos. 192, 194.) Jent and Harmon state that any force they used against Tolson "was reasonable and necessary and was used in a good-faith effort to restore control over Tolson and his cell." (Doc. No. 203, PageID# 1220, ¶ 10.)

In screening Tolson's amended complaint under 42 U.S.C. § 1997e(c), the Court found that Tolson stated the following claims: excessive force claims against Jent and Harmon in their individual capacities related to their trapping Tolson's hands in his cell's food port; deliberate indifference to medical needs claims against Jent and Roach in their individual capacities for failing to provide medical assistance to Tolson for his injuries; conditions of confinement claims against Hudson, Roach, Carter, and Navarrette in their individual capacities for denying Tolson access to showers and food; a Sixth Amendment right to counsel claim against Greer Fish in her individual capacity for causing Tolson to miss telephone calls with his attorney; and a First Amendment retaliation claim against Hudson in his individual capacity based on the December 13, 2018 altercation. (Doc. Nos. 74, 82.)

### B. The Motions for Summary Judgment

Tolson filed two motions for summary judgment (Doc. Nos. 172, 185), each accompanied by a document titled "plaintiff's concise statement(s) of undisputed material facts" (Doc. No. 173, PageID# 965; Doc. No. 186, PageID# 1040). The motions and supporting statements are functionally identical. (Doc. Nos. 172, 173, 185, 186.) Each contains a list of six "undisputable material fact[s]" which, in turn, include multiple facts and arguments. (Doc. No. 172, PageID# 947; Doc. No. 173, PageID# 957; Doc. No. 185, PageID# 1032; Doc. No. 186, PageID# 1041.) Each statement repeats or summarizes allegations made in the amended complaint, terms the allegations "well established," and cites the amended complaint. (Doc. No. 172, PageID# 947; Doc. No. 173, PageID# 957; Doc. No. 185, PageID# 1032; Doc. No. 186,

PageID# 1041.) Tolson also argues that video footage documents Hudson's retaliatory assault on December 13, 2018, and that Tolson's own behavior was not aggressive. (Doc. Nos. 172, 173, 185, 186.)

The defendants responded in opposition to Tolson's motions, arguing that Tolson failed to comply with the Federal Rules of Civil Procedure and this Court's Local Rules because he did not file a memorandum of law in support of his motions, a statement of undisputed material facts that complies with applicable procedural rules and cites specific record evidence, or any evidence to support his motions. (Doc. Nos. 188, 189.) The defendants also argue that Tolson's motions for summary judgment should be denied for the same reasons that their motion for summary judgment should be granted—because Tolson failed to exhaust his administrative remedies on certain claims and cannot show that the defendants violated his constitutional rights. (Doc. No. 189.) Tolson did not file a reply.

The defendants filed a motion for summary judgment (Doc. No. 201) supported by a memorandum of law (Doc. No. 202), statement of undisputed material facts (Doc. No. 203), and several declarations and exhibits (Doc. Nos. 190–197). The defendants argue that they are entitled to summary judgment because Tolson failed to exhaust his deliberate indifference to serious medical needs claim against Jent, conditions of confinement claims against Hudson, Roach, Carter, and Navarrette, retaliation claim against Hudson, and right to counsel claim against Greer Fish. (Doc. No. 202.) The defendants further argue that they are entitled to summary judgment on all of Tolson's claims because the record evidence shows no genuine issue of material fact that they violated Tolson's constitutional rights as he alleges. (*Id.*)

Tolson responds in opposition that he filed "dozens of grievances" at TTCC that the defendants refused to process. (Doc. No. 206, PageID# 1227.) Tolson also argues that the

defendants have incorrectly applied relevant law and that he has adequately supported his claims. (Doc. No. 206.) The defendants reply that Tolson did not respond to their statement of undisputed material facts and that Tolson's arguments about the unavailability of the grievance process are vague and unsubstantiated. (Doc. No. 207.)

## II.    Legal Standard

In resolving a motion for summary judgment, the Court must undertake "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted); *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 282 (6th Cir. 2012) ("Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))). The parties "must support" their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents,

10

electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or, alternatively, by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). Courts must view the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). However, if the moving party carries its initial burden, the non-moving party must show more than "[t]he mere existence of a scintilla of evidence in support of" his or her position. *Anderson*, 477 U.S. at 252. In order to proceed to trial, "there must be evidence on which the jury could reasonably find" for the non-moving party. *Id.*

Where, as here, the parties have filed cross-motions for summary judgment, "'the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 387 (6th Cir. 2016) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)).

Rule 56(c)(3) provides that the Court "need consider only" materials cited by the parties in their summary judgment briefing, "but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3); Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment ("[A] court may consider record materials not called to its attention by the parties."). The Court has considered the following materials in support of the parties' motions: the defendants' statement of undisputed material facts (Doc. No. 203); the defendants' summary judgment exhibits, including declarations and grievance records (Doc. Nos. 190–97); the defendants' responses to Tolson's requests for

admissions, which they filed in the context of a discovery dispute (Doc. No. 180-1); and other relevant records that Tolson attached to previous filings (Doc. Nos. 6, 8, 19, 23).

III.    **Analysis**

    A.    **The Defendants' Motion for Summary Judgment**

        1.    **Local Rule 56.01 and the Defendants' Initial Burden Under Federal Rule of Civil Procedure 56**

This Court's Local Rule 56.01 provides that a motion for summary judgment "must be accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial." M.D. Tenn. R. 56.01(b) (statement of undisputed material facts). Local Rule 56.01(b) exists "'to prevent parties from unfairly shifting the burdens of litigation to the court[,]'" *Matthews v. Copeland*, 286 F. Supp. 3d 912, 916 (M.D. Tenn. 2017) (quoting *Cabán Hernández v. Philip Morris USA, Inc.*, 486 F.3d 1, 8 (1st Cir. 2007)), and to ensure that a party facing a motion for summary judgment has adequate notice of and an opportunity to respond to the movant's claim that certain facts are undisputed. "Each fact must be set forth in a separate, numbered paragraph . . . [and] be supported by specific citation to the record." M.D. Tenn. R. 56.01(b) (statement of undisputed material facts). The movant must insert the word "response" after each numbered paragraph and allow the nonmoving party "sufficient space to respond to the assertion that the fact is undisputed." *Id.* "The requirement that a statement of undisputed material facts in the described format must accompany any motion for summary judgment applies to *pro se* parties[,]" although pro se litigants are not required to provide a copy of the statement in an editable electronic format to the opposing party. *Id.*; *see also Matthews*, 286 F. Supp. 3d at 915 (finding that "'it is incumbent upon litigants, even those proceeding *pro se*, to follow the . . . rules of procedure,' and this includes 'local and state court rules'" (alteration in original) (quoting *Fields v. Cnty. of Lapeer*, No. 99-2191, 2000 WL 1720727, at *2 (6th Cir. Nov.

8, 2000))). A party opposing a motion for summary judgment must respond to each asserted fact by "(1) Agreeing that the fact is undisputed; (2) Agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) Demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record." M.D. Tenn. R. 56.01(c) (response to statement of facts).

The defendants have filed a statement of undisputed material facts that complies with Local Rule 56.01(b) and is supported by specific record citations. (Doc. No. 203.) Tolson has responded to the defendants' statement of undisputed material facts, but has not met the requirements of Local Rule 56.01(c). M.D. Tenn. R. 56.01(c) (response to statement of facts). Instead, Tolson's response includes a list of four "false, convoluted and misleading allegations" that does not correspond to the defendants' statement and is not supported by specific record citations. (Doc. No. 206, PageID# 1227.) The defendants argue that, because Tolson failed to respond to their statement of undisputed material facts as the Court's rules require, those facts must be taken as undisputed and that the undisputed facts establish that summary judgment must be granted in their favor. (Doc. No. 207.)

The defendants are correct that Local Rule 56.01(f) requires the Court to take an asserted undisputed fact to which no adequate response has been given as true. M.D. Tenn. R. 56.01(f) (failure to respond). However, Tolson's failure does not remove the defendants' initial burden to show an absence of any genuine dispute of material fact under Federal Rule of Civil Procedure 56. *See Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir. 1991) ("[A] party moving for summary judgment always bears the burden of demonstrating the absence of a genuine issue as to a material fact . . . regardless if an adverse party fails to respond."); *Felix v. Young*, 536 F.2d 1126, 1135 (6th Cir. 1976) ("[T]he fact that the movant's affidavits are uncontroverted does not necessarily mean

that summary judgment should be granted[;] the ultimate burden of proving the propriety of summary judgment remains on the moving party.").

"Rule 56 first imposes a burden of production on the moving party to make a prima facie showing that it is entitled to summary judgment." 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727.1 (4th ed. updated Apr. 2022). "In this context, a 'prima facie' showing means that, in the absence of evidence to the contrary, the movant's evidence is sufficient to entitle the movant to summary judgment." 11 James Wm. Moore et al., *Moore's Federal Practice* § 56.40 (2022). Courts must view the moving party's evidence in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) ("[T]he moving party . . . ha[s] the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party."). If the moving party's evidence is insufficient, "'[n]o defense . . . is required'" and summary judgment must be denied. *Id.* at 161 (quoting 6 James Wm. Moore et al., *Moore's Federal Practice* § 56.22(2) (2d ed. 1966)); *see also* 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2727.1 (4th ed. updated Apr. 2022) ("If the movant fails to make that initial showing, the court must deny the motion, even if the opposing party has not introduced contradictory evidence in response.").

The Court must therefore examine the evidence that the defendants have offered in support of their motion to determine if it satisfies their initial burden with respect to each of Tolson's claims before considering the adequacy of Tolson's response in opposition. *See Adickes*, 398 U.S. at 160 ("'[W]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.'" (quoting Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment)); *see also*

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000) (holding that defendant "did not carry its initial burden of production" where evidence it produced in support of motion for summary judgment "purport[ed] to negate an essential element of plaintiffs' claim— timely notice—but . . . d[id] not actually do so").

### 2.     PLRA Exhaustion

The Prison Litigation Reform Act (PLRA) requires incarcerated plaintiffs to exhaust all available administrative remedies, including prison grievance procedures, before filing an action addressing the conditions of their confinement. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Himmelreich v. Fed. Bureau of Prisons*, 766 F.3d 576, 577 (6th Cir. 2014), *aff'd sub nom. Simmons v. Himmelreich*, 578 U.S. 621 (2016). The purpose of this exhaustion requirement is to "afford[ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter*, 534 U.S. at 525; *see also Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) ("The point of the PLRA exhaustion requirement is to allow prison officials 'a fair opportunity' to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court." (quoting *Woodford v. Ngo*, 548 U.S. 81, 94–95 (2006))). "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'—rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford*, 548 U.S. at 88); *see also Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) ("A prisoner exhausts his remedies when he complies with the grievance procedures put forward by his correctional institution.").

"[T]he PLRA's exhaustion requirement is a strict rule, but there are a few exceptions." *Does 8–10 v. Snyder*, 945 F.3d 951, 962 (6th Cir. 2019). The requirement is premised "'on the

"availab[ility]" of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones.'" *Id.* (alteration in original) (quoting *Ross v. Blake*, 578 U.S. 632, 642 (2016)). An administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 578 U.S. at 642 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). An administrative remedy is unavailable when: (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates[;]" (2) "an administrative scheme . . . [is] so opaque that it becomes, practically speaking, incapable of use[;]" or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–44. The Sixth Circuit requires an incarcerated person to make "'some affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable.'" *Napier v. Laurel Cnty.*, 636 F.3d 218, 223 (6th Cir. 2011) (quoting *Braswell v. Corr. Corp. of Am.*, No. 3:08-0691, 2009 WL 2447614, at *7 (M.D. Tenn. Aug. 10, 2009), *rev'd on other grounds*, 419 F. App'x 622 (6th Cir. 2011)). If the record shows such effort, courts will assess "whether an inmate's efforts to exhaust were sufficient under the circumstances[.]" *Id.* at 224.

Failure to exhaust under the PLRA is an affirmative defense for which the defendants bear the burden of proof. *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) (first quoting *Jones*, 549 U.S. at 216, and then quoting *Napier*, 636 F.3d at 225). Accordingly, summary judgment may be granted "'only if defendants establish the absence of a "genuine dispute as to any material fact" regarding non-exhaustion.'" *Id.* at 456 (quoting *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)). Because the defendants also bear the burden of persuasion for this issue at trial, their "initial summary judgment burden is 'higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury

would be free to disbelieve it.'" *Id.* at 455–56 (quoting *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). If the defendants meet this burden, the plaintiff must "present 'significant probative evidence' to defeat the motion for summary judgment on this ground." *Napier*, 636 F.3d at 225 (quoting *Anderson*, 477 U.S. at 249). If a plaintiff argues that an administrative remedy was unavailable to him, the defendants continue to bear the burden of proof and "must 'present evidence showing that the plaintiff's ability to exhaust was not hindered.'" *Lamb v. Kendrick*, 52 F.4th 286, 295 (6th Cir. 2022) (quoting *Surles*, 678 F.3d at 457 n.10).

Here, the defendants concede that Tolson properly exhausted his Eighth Amendment deliberate indifference claim against Roach and his Eighth Amendment excessive force claims against Harmon and Jent. (Doc. No. 202.) The defendants argue that Tolson failed to exhaust his Eighth Amendment deliberate indifference claim against Jent; Eighth Amendment conditions of confinement claims against Hudson, Roach, Carter, and Navarrette; First Amendment retaliation claim against Hudson; and Sixth Amendment right to counsel claim against Greer Fish. (*Id.*) In their statement of undisputed material facts, the defendants assert that "Tolson failed to exhaust his administrative remedies" as to each of these claims. (Doc. No. 203, PageID# 1218–19, ¶ 2–5.) Tolson did not to respond to those assertions. However, Local Rule 56.01(f) applies to "*facts*, not argument, conclusions, or legal principals." *New Century Found. v. Robertson*, 400 F. Supp. 3d 684, 690 n.1 (M.D. Tenn. 2019); *see also* M.D. Tenn. R. 56.01(f) (failure to respond) (providing that unaddressed "asserted facts shall be deemed undisputed for purposes of summary judgment"). Because the defendants' statements that Tolson failed to exhaust his administrative remedies are legal conclusions, they are not deemed undisputed for the purposes of summary judgment under Local Rule 56.01(f) even though Tolson did not properly respond to them. *See Barnes v. Garner*, No. 3:18-CV-01030, 2020 WL 4339649, at *5 (M.D. Tenn. July 27, 2020) (finding that

defendant's assertion in statement of undisputed material facts that plaintiff failed to exhaust was a legal conclusion, not an asserted fact, and could not be deemed undisputed even though plaintiff did not respond), *report and recommendation adopted*, 2020 WL 4735140 (M.D. Tenn. Aug. 14, 2020). The Court must therefore determine whether the defendants have offered sufficient proof to remove any genuine question of fact that Tolson did not exhaust his administrative remedies.

The defendants have provided a copy of TDOC Policy 501.01, which establishes a three-level process of administrative review for grievances filed at TDOC facilities. (Doc. No. 195-1.) At the first level (Level I), an incarcerated person must file a grievance "utilizing [TDOC form] CR-1394 within seven calendar days of the occurrence or the most recent occurrence giving rise to the grievance." (*Id.* at PageID# 1113, ¶ VI.C.1.) "Grievance forms which are improperly completed or contain insufficient information for processing shall be returned to the inmate with instructions as to proper completion." (*Id.*) The grievant can correct an improperly filed grievance or appeal the decision that the grievance was improper. (Doc. No. 195.)

The grievant must appeal a grievance denied at Level I to Level II "[w]ithin five calendar days of being notified of the Level I response[.]" (Doc. No. 195-1, PageID# 1114, ¶ VI.C.2.) At Level II, the institution's grievance committee holds a hearing, drafts a proposed response, and forwards that response to the institution's warden. (Doc. No. 195-1.) The warden accepts or rejects the committee's proposed response and returns that decision to the grievance committee's chairperson, who "will allow the grievant to review the grievance materials and responses." (*Id.* at PageID# 1114, ¶ VI.C.2.) The grievant must appeal an unfavorable results at Level II to Level III within five days of receiving the Level II response. (Doc. No. 195-3.) At Level III, TDOC's Deputy Commissioner of Operations or his or her designee reviews the grievance and prepares a response that "is final and is not subject to appeal." (*Id.* at PageID# 1114, ¶ VI.C.3.)

### a.     Tolson's Grievances

The record shows that Tolson filed numerous grievances while incarcerated at TTCC. (Doc. No. 195.) The defendants have submitted four of Tolson's grievances in support of their motion for summary judgment.[4] (Doc. Nos. 195-2–195-5.) Throughout the record, Tolson makes arguments that the grievance process was not available to him for various reasons, including that TTCC staff refused to process his grievances (Doc. Nos. 8, 23-1) and that all of his grievances were returned to him as inappropriate (Doc. No. 8). Tolson states that "officials were denying and refusing to process [his] grievances properly, attempting to prevent a paper trail and to cover up their violations." (Doc. No. 206, PageID# 1227.)

### i.     January 24, 2019 Grievance

On January 24, 2019, Tolson filed a grievance complaining that he had not been given an orientation to TTCC, received a personal identification number (PIN) to make telephone calls, or been able to create a list of approved phone-call recipients. (Doc. No. 195-2.) Tolson stated that, as a result, he had "not been able to use the phone at all, to access courts or [his] attorney." (*Id.* at PageID# 1126.) Tolson also alleged that Greer Fish was "constantly stalling and procrastinating giving [him] his PIN" and "refusing to give [him] his PIN." (*Id.* at PageID# 1127.)

On January 28, 2019, TTCC Grievance Chairperson Sergeant Cockrell signed an inappropriate grievance notification form regarding this grievance. (Doc. No. 195-2.) Cockrell indicated that Tolson's grievance violated TDOC grievance procedure requiring that "[g]rievances

---

[4]     TTCC Grievance Coordinator Elizabeth Lopez states by declaration that, "[d]uring his incarceration at [TTCC], Tolson filed other grievances complaining [about] his allegedly lost property, access to legal aid and the legal library, and his access to the barber while he was incarcerated in the restrictive housing unit." (Doc. No. 195, PageID# 1109, ¶ 12.) The defendants have not filed the other grievances in support of their motion for summary judgment, and Lopez states that her "understanding [is] that these grievances are not relevant to [Tolson's] claims in this litigation." (*Id.*) Tolson has not challenged this assertion.

must be filed within seven calendar days of the occurrence giving rise to the grievance" and that a grievance "not address multiple issues." (*Id.* at PageID# 1129.) Cockrell also noted that the grievance was returned because Tolson had received a telephone PIN and had created a phone-call recipient list with only one entry. (Doc. No. 195-2.) On February 12, 2019, the supervisor assigned to review Tolson's grievance stated that, "according to IC Solutions Ms. Greer did add numbers to [Tolson's] list on [January 25, 2019]." (*Id.* at PageID# 1128.) Tolson's grievance form shows that, in response to the question "[d]o you wish to appeal this response," Tolson checked both yes and no and signed the form twice, on January 31 and on February 13, 2019. (*Id.* at PageID# 1126.) Lopez states by declaration that Tolson never appealed the decision that this grievance was improper. (Doc. No. 195.)

### ii. January 31, 2019 Grievance

Tolson filed a grievance on January 31, 2019, stating that TTCC officials, including Carter and Navarrette, failed to respond to his requests to access legal assistance and the law library. (Doc. No. 195-3.) Tolson also complained that his "privileged attorney phone call was denied claiming the phone didn't work properly" and that he was "not allowed any phone privileges, even [his] privileged attorney calls[.]" (*Id.* at PageID# 1132.) On February 1, 2019, the supervisor assigned to review Tolson's grievance stated that he "reviewed all of the inmate requests for [legal aid made in] December 2018 and January 2019" and that "Tolson's requests are not among them." (*Id.* at PageID# 1133.) The supervisor wrote that the facility was on lockdown and that legal assistance would be available when the lockdown was lifted. (Doc. No. 195-3.)

On February 12, 2019, Cockrell wrote that he reviewed the supervisor's response, that "[n]o hearing held due to inappropriate grievance[,]" and that he agreed with the supervisor's response and reasons. (*Id.* at PageID# 1134.) On the same day, the warden signed the grievance. (Doc. No. 195-3.) Tolson signed the grievance on February 14, 2019, indicating that he did not

wish to appeal the decision. (*Id.*) Lopez states by declaration that Tolson never appealed the grievance. (Doc. No. 195.)

### iii. April 1, 2019 Grievance

On April 1, 2019, Tolson submitted a grievance complaining, among other things, that he had been requesting sick calls since December and asking "the doctor to notify the staff here to house me on bottom floor/bottom bunk in compliance with my Class B medical restrictions from the doctor." (Doc. No. 195-4, PageID# 1135–36.) On May 6, 2019, the supervisor assigned to review Tolson's grievance wrote that, "even though this grievance is deemed inappropriate, I will answer some or most of these [complaints]." (*Id.* at PageID# 1137.) The supervisor stated that Tolson's chart showed that he was classified for placement on a bottom bunk and that "this information was given to [his] case manager to rectify on [April 23, 2019] . . . ." (*Id.*) On May 10, 2019, Cockrell signed a response stating that the "[g]rievance and supervisor response" had been reviewed, that "[n]o hearing [was] held due to inappropriate grievance[,]" and that he agreed with the supervisor's response. (*Id.* at PageID# 1138.) On May 16, 2019, the warden checked a box indicating agreement with the proposed response. (Doc. No. 195-4.)

Tolson appealed the grievance on May 21, 2019. (*Id.*) On May 22, 2019, the TDOC Acting Assistant Commissioner of Prisons signed a response stating that "[t]he Director of Health Services has reviewed the grievance" and checked a box marked "Concur with Supervisor[.]" (*Id.* at PageID# 1143.) Lopez states by declaration that "Tolson pursued this grievance through all three levels of the grievance procedure." (Doc. No. 195, PageID# 1108, ¶ 10.)

### iv. April 26, 2019 Grievance

Tolson submitted a grievance on April 26, 2019, stating that, on April 20, 2019, Jent and Harmon "closed [his] hands in the food port and pressed both of their combined body weight against it causing injuries to [his] hands and wrists." (Doc. No. 195-5, PageID# 1144.) Tolson

21

stated that no injury report was filed regarding the incident and that he did not "get a bag of ice for [his] hand, or pictures taken of it." (*Id.*) The supervisor response form, which is not signed, states "I observed milestone [internal video footage] on the time and date that . . . Tolson provided in the grievance" and observed "Officer Jent [placing] food trays in the food port" and "Tolson [using] the food trays to block Officer Jent from closing the food port." (*Id.* at PageID# 1145.)

On May 15, 2019, Cockrell wrote that he had reviewed the grievance and response, that no hearing was held because the grievance was inappropriate, and that he agreed with the supervisor's response and reasons. (Doc. No. 195-5.) On the same day, the warden checked a box indicating agreement with the proposed response. (*Id.*) Tolson appealed that response on May 21, 2019. (*Id.*) On May 22, 2019, the TDOC Acting Assistant Commissioner of Prisons signed a response stating that "[t]he grievant failed to substantiate allegation(s) presented to the satisfaction of the Grievance Committee" and that "[a]dditional information has not been presented which indicates the Level 2 response was inappropriate." (*Id.* at PageID# 1150.) The Acting Assistant Commissioner of Prisons checked two boxes marked "Concur with Warden" and "Appeal Denied[.]" (*Id.*) Lopez states by declaration that "Tolson pursued this grievance through all three levels of the grievance procedure." (Doc. No. 195, PageID# 1108, ¶ 11.)

### v. Additional Unprocessed Grievance Forms

The record contains six additional grievance forms that Tolson completed and that he claims the defendants refused to process. (Doc. Nos. 6, 8, 19, 23.) Tolson provided these grievance forms as attachments to earlier filings, not with the summary judgment briefing. The Court addresses them as "other materials in the record." Fed. R. Civ. P. 56(c)(3).

On February 10, 2019, Tolson completed a grievance form stating that "Roach forced [him] to move upstairs against [his] medical restrictions that prohibit [him] from climbing stairs" and that his new cell lacked a speaker or emergency call button. (Doc. No. 19, PageID# 110.) At the

bottom of the grievance form, there is a statement attributed to "maintenance" that says "Can confirm there's no speaker. 3/26/19." (*Id.* at PageID# 111.) The sections on the form to be completed by the grievance clerk and chairperson are blank. (Doc. No. 19.) Tolson also filed a second version of this grievance in which a new paragraph is added to his statement. (Doc. No. 23-1.) In the new paragraph, Tolson states that he filed the grievance on February 10, 2019, and did not get a response. (*Id.*) He then made a copy of the grievance and had the maintenance person witness it. (*Id.*) The documents are otherwise identical. (*Id.*)

On March 1, 2019, Tolson completed a grievance form alleging that prison officials had not given him cleaning supplies for a month. (Doc. No. 6.) He stated that several people in his housing unit had filed grievances regarding cleaning supplies and that their grievances were not being properly processed. (*Id.*) Again, the sections on the form to be completed by the grievance clerk and chairperson are blank. (*Id.*)

On March 5, 2019, Tolson completed a grievance form stating that prison officials were not responding in a timely manner to his grievances. (*Id.*) The sections for the grievance clerk and chairperson are blank. (*Id.*)

On March 26, 2019, Tolson completed a grievance form stating that he had been requesting a hygiene kit for over three months and that Correctional Officer Milton had been unsuccessful in securing one for him. (Doc. No. 19.) Tolson also wrote that, because the staff were refusing to process his grievances, he "file[s] [his] grievances and get[s] the officer working the pod to verify it with signature." (Doc. No. 19, PageID# 113.) The form, which was not filled out by the grievance clerk or chairperson, shows that it was signed by Milton at 10:00 on April 13, 2019. (Doc. No. 19.) Tolson also filed a second version of the March 26, 2019 grievance. (Doc. No. 23.) This version contains an identical description of the hygiene kit issue and Milton's signature. (*Id.*)

23

However, it has different language regarding Tolson's allegations that the defendants refused to process his grievance. (*Id.*) In the second version, Tolson states that he is not filing the grievances: "The staff here refuse to process my grievances on these issues so I just write the grievance and get the officer working the pod to witness and sign the grievance because I file grievances and never get any response(s) . . . ." (Doc. No. 23-1, PageID# 165.)

On April 8, 2019, Tolson completed a grievance form stating that prison officials failed to give people in restrictive housing access to legal assistance. (Doc. No. 8.) The sections on the form to be completed by the grievance clerk and chairperson are blank. (*Id.*)

On April 10, 2019, Tolson completed a grievance form stating that Officer Turner delivered his legal mail opened and late. (Doc. No. 23-1.) Underneath his description of the problem, Tolson wrote "[Correctional Officer] D. Turner is a witness to these facts" with a space for a signature; the form is not signed. (*Id.* at PageID# 151.) The sections to be completed by the grievance clerk and chairperson are also blank. (Doc. No. 23-1.)

### vi.        Tolson's Letters to the Court

The record contains two letters from Tolson addressed to the Clerk of Court and the TDOC Commissioner regarding his efforts to file grievances. (Doc. Nos. 6, 8.) In a letter dated March 4, 2019, Tolson stated that he was "filing grievances every week" but that prison officials were refusing to file or process those grievances because of his pending lawsuit. (Doc. No. 6, PageID# 31.) Tolson stated that, although grievances "should only take 7 days to be processed," he had filed several grievances and received no response for "a whole month." (*Id.*) He also stated that he gave a grievance form to a correctional officer who "took it to the grievance box and the next day the grievance sargent [sic] just sent it back to my cell without even processing it." (*Id.*) Tolson then addressed the subjects of the grievances he had attempted to file and the ways in which

TTCC officers were not following TDOC grievance procedures. (Doc. No. 6.) Tolson attached a copy of his March 5, 2019 grievance to the letter. (*Id.*)

In a letter dated March 21, 2019, Tolson repeated his claims that his grievances were not being processed "in attempts to prevent [him] from getting a clear paper trail of evidence of their violations here at TTCC." (Doc. No. 8.) Tolson attached a copy of his April 8, 2019 grievance and stated that he had "decided to send copies of [his] grievances from now on to the U.S. District Court and to the Commissioner to ensure that [his] grievances are being put on record with the courts even if the staff [at TTCC] is intentionally refusing to process them and are destroying them or whatever they are doing with my grievances that are not being processed." (*Id.*)

> **b.** **Tolson's Eighth Amendment Deliberate Indifference Claim against Jent; Eighth Amendment Conditions of Confinement Claims against Hudson, Roach, Carter, and Navarrette; and First Amendment Retaliation Claim against Hudson.**

The defendants argue that there is no evidence in the record that Tolson filed any grievances related to (1) his Eighth Amendment deliberate indifference to serious medical needs claim that Jent failed to get him medical assistance on April 19, 2019; (2) his Eighth Amendment conditions of confinement claims that Hudson, Roach, Carter, and Navarrette deprived him of food, bedding, and showers; and (3) his First Amendment retaliation claim that Hudson retaliated against Tolson for successfully challenging a disciplinary action by harassing and attacking him. (Doc. No. 202.) None of the grievances in the record addresses these claims. The defendants have therefore met their initial burden to show an absence of any dispute of material fact that Tolson failed to exhaust them. *Jones*, 549 U.S. at 218. Tolson thus must present "significant probative evidence" that he did administratively exhaust these claims or argue that exhaustion was not available. *Napier*, 636 F.3d at 225 (quoting *Anderson*, 477 U.S. at 249). Tolson has not offered any evidence to show that he did exhaust these claims. Instead, Tolson argues generally that the

grievance process was unavailable to him because TTCC officials refused to process his grievances. (Doc. No. 206.)

"The Sixth Circuit has never adopted a burden-shifting approach for the affirmative defense of PLRA exhaustion, holding instead that[,] 'if the plaintiff contends that he was prevented from exhausting his remedies,' the defendant must 'present evidence showing that the plaintiff's ability to exhaust was not hindered.'" *Lamb*, 52 F.4th at 295 (quoting *Surles*, 678 F.3d at 457 n.10); *see also id.* (noting that "the Seventh Circuit similarly holds that '[f]ailure to exhaust is an affirmative defense, so the defendants bear the burden of proof and cannot shift it to require [the plaintiff] to show that administrative remedies were unavailable'" (alterations in original) (quoting *Gooch v. Young*, 24 F.4th 624, 627 (7th Cir. 2022))). However, "[t]he Sixth Circuit requires some affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable." *Napier*, 636 F.3d at 223 (quoting *Braswell*, 2009 WL 2447614, at *7); *see also Lamb*, 52 F.4th at 295 (considering "whether Lamb made sufficient affirmative efforts to comply with [the subject grievance procedure]" before considering whether defendants had offered evidence to show the procedure was available); *Burley v. Williams-Ward*, No. 2:18-CV-12239, 2019 WL 3307807, at *5 (E.D. Mich. May 31, 2019) (finding plaintiff had shown adequate affirmative effort when record evidence included plaintiff's declaration describing attempt to file a grievance, copy of unprocessed grievances related to claim, and plaintiff's letters to prison officials concerning the claims at issue sent during the time period of the alleged violations), *report and recommendation adopted by* 2019 WL 2723671 (E.D. Mich. July 1, 2019).[5]

---

[5] The Sixth Circuit has not directly addressed how its requirement that a plaintiff show an affirmative effort to administratively exhaust a claim fits into the analysis structure confirmed in *Lamb*. For purposes of this Report and Recommendation, the Court treats that requirement as a threshold issue that is distinct from the defendants' burden, as it appears the Sixth Circuit did in in *Lamb*. *Lamb*, 52 F.4th at 295–296.

Tolson has not offered any evidence to show that he attempted to file grievances related to these claims or otherwise raise them to TTCC officials. None of the grievances that Tolson argues he was prevented from filing includes issues related to these claims. (Doc. Nos. 6, 8, 19, 23.) Tolson has not provided an affidavit or other evidence describing any unsuccessful efforts he made to comply with the grievance process regarding these issues. The only mention Tolson makes of attempting to file grievances related to these issues comes in his unverified amended complaint, in which he alleges that he filed emergency grievances related to being deprived of food and showers that were "returned as [']non-emergency['] because they weren't life threatening." (Doc. No. 46, PageID# 317.) Because the amended complaint is not verified, however, that allegation does not carry the evidentiary weight of an affidavit or declaration. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008).[6]

Tolson has provided no evidence to show that he made an affirmative effort to pursue grievances related to his Eighth Amendment deliberate indifference to serious medical needs claim against Jent; Eighth Amendment conditions of confinement claims against Hudson, Roach, Carter, and Navarrette; or First Amendment retaliation claim against Hudson. The defendants have therefore carried their burden to show no genuine issue of material fact that Tolson did not administratively exhaust those claims. Because Tolson has not offered any evidence that he

---

[6]    While Tolson's letters to the Court and the TDOC Commissioner (Doc. Nos. 6, 8) directly address his argument that the grievance process was not available to him, those letters address Tolson's attempts to use the grievance process after he filed this lawsuit; in them, Tolson argues that TTCC officials stopped processing his grievances because he filed this lawsuit. The letters do not show that Tolson attempted to file grievances related to the events that are the basis for his claims in this case, which necessarily predate its filing.

attempted to pursue grievances related to these claims, the Court will not consider his argument that the grievance process was unavailable to him.[7]

c.    Tolson's Sixth Amendment Right to Counsel Claim against Greer Fish

Tolson filed a grievance on January 31, 2019, alleging, among other things, that his "privileged attorney phone call was denied [by Greer Fish] claiming the phone didn't work properly." (Doc. No. 195-3, PageID# 1132.) On January 31, 2019, someone completed the "response of supervisor of grieved employee or department" portion of the grievance form, stating that he or she had reviewed requests for legal assistance in December 2018 and January 2019 and that "Tolson's requests are not among them." (*Id.* at PageID# 1133.) The response noted a recent lockdown at TTCC and stated that legal assistance would be available when the lockdown was lifted. (Doc. No. 195-3.) It also stated that Tolson could request legal materials during the lockdown by completing an inmate request form and sending it to the library. (*Id.*) Tolson appealed that response. (*Id.*) At Level II, Cockrell stated that he concurred with the Level I response and that "no hearing [had been] held due to inappropriate grievance per policy 501.01." (*Id.* at PageID# 1134.) Tolson signed the grievance on February 14, 2019, and checked the box indicating that he did not want to appeal the grievance to Level III. (Doc. No. 195-3.) Tolson offers no contrary evidence to create an issue of fact that he did appeal the grievance to Level III. The defendants have therefore shown an absence of any dispute of material fact that Tolson did not exhaust his Sixth Amendment right to counsel claim against Greer Fish.

Tolson again argues, however, that he did not exhaust the grievance because the grievance process was unavailable to him. (Doc. No. 206.) The evidence that Tolson pursued a grievance

---

[7]    Further, the defendants have provided evidence to show that Tolson's ability to exhaust his grievances was not hindered. *See* discussion *infra* Section III.A.2.c.

regarding this issue through Level II shows that he made an effort to comply with the grievance process. *See, e.g.*, *Hugueley v. Parker*, No. 3:19-cv-00598, 2020 WL 4753845, at *7–8 (M.D. Tenn. Aug. 17, 2020) (finding that plaintiff made an affirmative effort when he submitted a grievance). Accordingly, the defendants must "present evidence showing that [Tolson's] ability to exhaust was not hindered." *Lamb*, 52 F.4th at 295 (quoting *Surles*, 678 F.3d at 457 n.10).

The defendants have carried this burden. The grievance process is not unavailable when a plaintiff can appeal a grievance that has been found inappropriate but does not do so. *Gaikuot v. Whitehead*, No. 1:14-cv-00083, 2016 WL 11430761, at *4 (M.D. Tenn. July 26, 2016) (finding that the grievance process was not unavailable when plaintiff who argued grievance was erroneously marked as inappropriate failed to follow procedure and appeal that grievance response). In a sworn affidavit, Lopez states that, if a grievance is deemed inappropriate, TDOC allows the grievant to appeal that response. (Doc. No. 195.) Two of Tolson's other grievances provided in the record show that he followed this procedure by appealing grievances deemed inappropriate through all three levels of the grievance process. (Doc. Nos. 195-4, 195-5.) Tolson offers no evidence to show that the ability to appeal was not available in this instance. The defendants have therefore carried their burden to show that summary judgment is warranted on Tolson's Sixth Amendment right to counsel claim against Greer Fish because Tolson did not exhaust his administrative remedies regarding that claim.

### 3. Tolson's Remaining Claims

The defendants do not dispute that Tolson administratively exhausted his remaining Eighth Amendment excessive force claims against Jent and Harmon and Eighth Amendment deliberate indifference claim against Roach, all brought under § 1983. "Section 1983 provides a civil enforcement mechanism for all inmates who suffer constitutional injuries at the hands of '[a]ny person acting under color of state law.'" *Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 494 (6th

Cir. 2008) (alteration in original) (quoting 42 U.S.C. § 1983). To prevail on a § 1983 claim, a plaintiff must show "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 736 (6th Cir. 2015) (quoting *Jones v. Muskegon Cnty.*, 625 F.3d 935, 941 (6th Cir. 2010)). Jent, Harmon, and Roach do not dispute that they are state actors for purposes of liability under § 1983 or that they were acting under color of law in performing the events underlying Tolson's claims. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996) (finding that prison officials at privately-run prison were performing traditional state function and thereby acting under color of state law). The only remaining question at summary judgment is whether there is a genuine issue of material fact that Jent, Harmon, and Roach deprived Tolson of his rights.

### a. Tolson's Eighth Amendment Excessive Force Claims Against Jent and Harmon

Tolson alleges that Jent and Harmon used excessive force in violation of his Eighth Amendment rights by putting all of their combined body weight on his hands while they were outside his cell door's food port, causing swelling, scratching, bruising, and permanent numbness in one hand. (Doc. No. 46.) Jent and Harmon argue that they are entitled to summary judgment on this claim because there is no genuine dispute of material fact that any force they used was reasonable and employed in good faith or that Tolson suffered no more than a *de minimis* physical injury. (Doc. No. 202.)

While force may be used to maintain security and discipline in a prison setting, "[p]rison officials nonetheless violate the Eighth Amendment when their 'offending conduct reflects an unnecessary and wanton infliction of pain.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)). A claim that a prison official used excessive force has objective and subjective components. The subjective component

addresses "whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically to cause harm." *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). Factors relevant to that inquiry include

> "the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted," as well as "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response."

*Id.* at 581 (alteration in original) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). "The objective component requires the pain inflicted to be 'sufficiently serious.'" *Id.* at 580 (alteration omitted) (quoting *Williams*, 631 F.3d at 383). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Wilkins v. Gaddy*, 559 U.S. 34, 37–38 (2010) (quoting *Hudson*, 503 U.S. at 9–10). The central inquiry in analyzing an excessive force claim, however, is "not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* at 37 (quoting *Hudson*, 503 U.S. at 7). Slamming or striking an incarcerated person's hand while it is in a food port can violate the Eighth Amendment. *See, e.g.*, *Nelson v. Sharp*, No. 96-2149, 1999 WL 520751, at *2 (6th Cir. July 14, 1999) (reversing district court's grant of summary judgment when there was a genuine dispute of material fact as to whether correctional officer intentionally slammed plaintiff's hand in the food port "to inflict unnecessary pain in a wanton manner"); *Crippen v. Jok*, Civ. No. 3:20-00561, 2021 WL 4523686, at *5 (M.D. Tenn. Oct. 4, 2021) (finding a genuine dispute of material fact as to whether the defendant used excessive force in repeatedly slamming plaintiff's hand in the food port), *report and recommendation adopted by* 2022 WL 187819 (M.D. Tenn. Jan. 20, 2022); *Strawther v. Lindamood*, Civ. No. 1-07-0079, 2009 WL 223118, at *7–8 (M.D. Tenn. Jan.

29, 2009) (denying defendants' motion for summary judgment when there was a genuine dispute of fact about officer's intent in smashing food port on plaintiff's finger).

Turning first to the subjective component of Tolson's claim, the defendants have offered evidence to show that any force Jent and Harmon used was "'in a good-faith effort to maintain or restore discipline'" rather than to "'maliciously and sadistically [ ] cause harm.'" *Cordell*, 759 F.3d at 580 (quoting *Hudson*, 503 U.S. at 7). In their statement of undisputed material facts, Jent and Harmon assert that "Tolson created a security risk when he blocked the food port in his cell door on or about April 20, 2019, and refused to follow verbal commands to remove the blockage." (Doc. No. 203, PageID# 1220, ¶ 9.) They also state that "any force that was used against Tolson was reasonable and necessary and was used in a good-faith effort to restore control over Tolson and his cell." (Doc. No. 203, PageID# 1220, ¶ 10.) Because Tolson did not adequately respond to the defendants' statement of undisputed material facts, the Court takes these statements as true. M.D. Tenn. R. 56.01(f) (failure to respond). Jent also states by declaration that he "did not use unprovoked or excessive force against Tolson . . . [and] [he] did not use force against Tolson to maliciously cause harm." (Doc. No. 194, PageID# 1103, ¶ 8.) Harmon states by declaration that he "did not use unprovoked or excessive force against Tolson . . . [and] [he] did not use force against Tolson to maliciously cause harm." (Doc. No. 192, PageID# 1095, ¶ 6.)

> b. Tolson has not provided any contrary evidence. Accordingly, there is no genuine issue of material fact as to the subjective component of Tolson's Eighth Amendment excessive force claims. The Court need not consider the objective component. *See Carter v. Melton*, No. 2:13-00019, 2014 WL 1715452, at *6 (M.D. Tenn. Apr. 30, 2014) (finding it unnecessary on summary judgment to address the objective component of the excessive force claim when the subjective component was not satisfied), *report and recommendation adopted sub nom. Gary Carter v. Melton*, 2014 WL 4467631 (M.D. Tenn. Sept. 8, 2014). Jent and Harmon are entitled to summary judgment on Tolson's

excessive force claims against them. **Tolson's Eighth Amendment Deliberate Indifference Claim Against Roach**

Tolson claims that Roach was deliberately indifferent to his serious medical needs when he moved Tolson to an upper-level cell in violation of a standing medical order that Tolson be housed only on the lower level of a facility because of a herniated and bulging disc that limited his ability to climb stairs. (Doc. No. 46.) Tolson claims that he was injured by Roach's action when he collapsed while trying to climb the stairs to his cell. (*Id.*)

"The Eighth Amendment forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Like an excessive force claim, a deliberate indifference claim also has objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Blackmore*, 390 F.3d at 895. The objective component requires a plaintiff to show the existence of a "sufficiently serious" medical need. *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Richmond v. Huq*, 885 F.3d 928, 938 (6th Cir. 2018) (quoting *Blackmore*, 390 F.3d at 897). The subjective component requires a plaintiff to show that the defendant had "a sufficiently culpable state of mind in denying medical care." *Blackmore*, 390 F.3d at 895 (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)). This showing "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

*Id.* at 837. "Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Blackmore*, 390 F.3d at 896 (quoting *Horn v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994)).

Roach does not contest that Tolson had a standing medical order or that Tolson's herniated and bulging disc constitutes a sufficiently serious medical need for Eighth Amendment purposes. Thus, the remaining question is whether Roach had "a sufficiently culpable state of mind in denying [Tolson] medical care." *Blackmore*, 390 F.3d at 895 (quoting *Brown*, 207 F.3d at 867). A prison official knowingly moving an incarcerated person to a housing assignment that puts his or her health at risk can constitute deliberate indifference. *See Perez v. Oakland Cnty.*, 466 F.3d 416, 425 (6th Cir. 2006) (finding a genuine issue of material fact as to whether caseworker knowingly disregarded risk of suicide by moving incarcerated person who had attempted suicide, had known mental illness, and had refused psychotropic medication to single-cell housing). However, a prison official is not deliberately indifferent to an incarcerated person's medical needs if he or she is not aware of the medical issues implicated by the housing move. *See, e.g.*, *Gibson v. Taylor*, No. 2:08-cv-1114, 2011 WL 124228, at *4–6 (S.D. Ohio Jan. 14, 2011) (finding that shift captain was not deliberately indifferent to plaintiff's medical needs because he was not aware of plaintiff's medical restrictions when he moved plaintiff to a new unit and assigned plaintiff to a top bunk), *report and recommendation adopted by* 2011 WL 1303290 (S.D. Ohio Apr. 1, 2011). A prison official also does not show deliberate indifference if he does not have control over housing assignments and executes another official's decision. *Stewart v. Becker*, Civ. No. 11-2315, 2014 WL 4782947, at *3 (W.D. Tenn. Sept. 24, 2014) (finding that counselor who was not assigned to plaintiff's unit and had no control over housing assignments was not deliberately indifferent to plaintiff's medical needs when she refused to change plaintiff's assigned cell).

The defendants' statement of undisputed material facts asserts that Roach was not aware of Tolson's medical restrictions and did not have the authority to assign people incarcerated at TTCC to any particular housing unit or cell or to change their housing unit or cell assignments. (Doc. No. 203.) Because Tolson did not adequately respond to the defendants' statement of undisputed material facts, the Court takes these assertions as true. M.D. Tenn. R. 56.01(f) (failure to respond). Roach also states by declaration that, if he had been aware that Tolson should be housed in a cell on the first floor, he would have "reported that information to the unit manager . . . [and] requested that Tolson's cell assignment be updated." (Doc. No. 197, PageID# 1156, ¶ 10.) Like the defendant counselor in *Stewart*, Roach has offered evidence to show that he had no control over Tolson's cell assignment.

Tolson has not identified or offered any evidence at summary judgment to show that Roach was aware of his standing medical order or had the authority to change his cell assignment. Tolson has provided medical records with filings not related to summary judgment, including a record of his Class B Medical Restriction due to orthopedic disease. (Doc. No. 23-1.) But whether Tolson has a sufficiently serious medical need is not at issue. Although Tolson alleges in his amended complaint that Roach intentionally moved him in violation of his Class B medical restriction, that unverified allegation does not satisfy his burden to identify evidence sufficient to create a genuine issue of material fact regarding Roach's state of mind. *See King v. Harwood*, 852 F.3d 568, 578 (6th Cir. 2017) (holding that "'a verified complaint . . . satisfies the burden of the nonmovant to respond' to a motion for summary judgment, unlike 'mere allegations or denials' in unverified pleadings" (alteration in original) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 385 (6th Cir. 1999) (en banc))). Tolson has not introduced evidence to create a genuine dispute of material fact as to whether Roach had "a sufficiently culpable state of mind in denying medical care."

*Blackmore*, 390 F.3d at 895 (quoting *Brown*, 207 F.3d at 867). Summary judgment is appropriate on Tolson's deliberate indifference claim against Roach. *Anderson*, 477 U.S. at 251–52.

Because the defendants have shown that summary judgment in their favor is appropriate on all of Tolson's claims, the Magistrate Judge will recommend that their motion for summary judgment be granted.

### B. Tolson's Motions for Summary Judgment

Tolson's motions for summary judgment do not comply with the Court's Local Rules. First, Local Rule 7.01(a)(2) provides that "every motion that may require the resolution of an issue of law must be accompanied by a separately filed memorandum of law citing supporting authorities . . . ." M.D. Tenn. R. 7.01(a)(2) (motion and supporting memorandum). Tolson's motions for summary judgment ask the Court to find that Tolson prevails on all of his claims against the defendants as a matter of law (Doc. Nos. 172, 185), but Tolson has not filed the required supporting memorandums setting out his legal arguments.

Tolson also has not complied with Local Rule 56.01(b)'s requirements regarding statements of undisputed material facts. M.D. Tenn. R. 56.01(b) (statement of undisputed material facts). Tolson filed two documents that include lists of statements followed by the word "response" and a blank space. (Doc. Nos. 173, 186.) However, Tolson has not supported "each fact" asserted in these statements "by specific citation to the record." M.D. Tenn. R. 56.01(b). The documents include only three record citations, each of which is to Tolson's unverified amended complaint. (Doc. Nos. 173, 186.)

Because Tolson has not filed supporting memorandums of law or statements of undisputed material facts supported by citations of supporting evidence in the summary judgment record, his motions for summary judgment do not comply with the Court's Local Rules and will be denied for that reason. However, the Court's analysis of the defendants' motion for summary judgment

also shows that Tolson has not provided any evidence from which the Court could find that he has established no genuine issue of material fact as to any of his claims, particularly when construing the record evidence in the light most favorable to the defendants, as the Court must do when deciding his motions. Denying Tolson's motions for summary judgment is appropriate on that basis as well.

## IV.     Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that the defendants' motion for summary judgment (Doc. No. 201) be GRANTED and that Tolson's motions for summary judgment (Doc. Nos. 172, 185) be DENIED.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 30th day of December, 2022.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge