IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DAMIEN DEVON TOLSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) NO. 3:19-cv-00175 |
| v. | ) JUDGE RICHARDSON |
| | ) |
| WARDEN F/N/U WASHBURN, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**Memorandum Opinion and Order**

Pending before the Court[1] are the parties' cross-motions for summary judgment (Doc. Nos. 172, 185, 201)[2]. Plaintiff is proceeding *pro se*.[3] The Magistrate Judge issued a Report and Recommendation (Doc. No. 210, "R&R") on December 30, 2022, in which she recommends that Defendants' motion for summary judgment be granted and that Plaintiff's motions for summary

---

[1] Herein, generally "the Court" refers to the undersigned district judge, as distinguished from the Magistrate Judge who issued the R&R.

[2] Plaintiff filed two motions for summary judgment (Doc. Nos. 172, 185). As the Magistrate Judge pointed out in the R&R, the filings are functionally identical to one another. To the extent necessary, the Court considers both filings in its resolution of Defendants' motion for summary judgment.

[3] The liberal treatment of *pro se* pleadings "does not require lenient treatment of substantive law" and does not "apply after a case has progressed to the summary judgment stage." *See Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at * 3 (6th Cir. May 5, 2010). Nonetheless, where Plaintiff's objections can be fairly construed as objecting to a portion of the Magistrate Judge's report and recommendation, even if the objection does not identify the portion through page numbers and paragraphs, the Court will treat the objection as procedurally proper. However, where any of Plaintiff's objections lack the specificity required under Local Rule 72.02, the Court must hold Plaintiff accountable for compliance with this district's local rules, despite his *pro se* status.

judgment be denied. Plaintiff filed objections to the R&R (Doc. No. 211), and Defendants filed a response to Plaintiff's objections (Doc. No. 212)[4].

When a magistrate judge issues a report and recommendation regarding a dispositive pretrial matter, the district court must review *de novo* any portion of the report and recommendation to which a proper objection is made. Fed. R. Civ. P. 72(b)(3). "Parties cannot 'raise at the district court stage new arguments or issues that were not presented' *before* the magistrate judge's final R&R." *See Meddaugh v. Gateway Financial Service*, 601 F. Supp. 3d 210, 213 (E.D. Mich. 2022) (quoting *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000)).

The district judge may accept, reject, or modify the recommended disposition, review further evidence, or return the matter to the magistrate judge with instructions. *Id.* Fed. R. Civ. P. 72(b)(2) provides that a party may file "specific written objections" to a report and recommendation, and Local Rule 72.02(a) provides that such objections must be written and must state with particularity the specific portions of the Magistrate Judge's report or proposed findings or recommendations to which an objection is made. Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(3), the Court has reviewed the Report and Recommendation, the Objections, and the file. For the reasons stated herein, the Court overrules Plaintiff's objections and adopts and approves the Report and Recommendation. Therefore, Defendants' motion for summary judgment (Doc. No. 201) is granted and Plaintiff's motions for summary judgment (Doc. Nos. 172, 185) are denied.

---

[4] Each of Defendants' filings material to the instant motions was made jointly on behalf of all Defendants. The Court herein refers to "Defendants" (plural) asserting arguments and positions—even when such assertions and positions relate to fewer than all Defendants that had not previously been dismissed.

## PLAINTIFF'S CLAIMS[5]

Plaintiff is currently incarcerated at Trousdale Turner Correctional Center ("TTCC"), operated by CoreCivic, Inc. ("CoreCivic"), a private for-profit corporation.[6] (Doc. No. 210 at 1, n. 1). Plaintiff brings his claims under 42 U.S.C. § 1983 based on alleged violations of his rights under the First, Sixth, and Eighth Amendments to the United States Constitution (as those Amendments are made applicable to the State of Tennessee via incorporation through the Fourteenth Amendment). To establish a claim under § 1983, a plaintiff must prove the deprivation of a right secured by the Constitution of the United States, and that the deprivation was caused by a person acting under the color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149 (1978).

## BACKGROUND[7]

The R&R adequately states the allegations, undisputed facts, and respective positions of the parties. The Court, however, will provided a brief overview here, largely by citing to the R&R (Doc. No. 210).

After arriving at TTCC in November 2018, Plaintiff was placed in restrictive housing and written up for defiance. (*Id.* at 4). The defiance charge was later dismissed as unsubstantiated, after which Plaintiff claims prison officials began retaliating against him. (*Id.*). Plaintiff claims that

---

[5] As explained by the Magistrate Judge, the operative pleading in this case is Plaintiff's amended complaint, Doc. No. 46. (Doc. No. 210 at 3).

[6] Although CoreCivic is a private corporation, rather than an arm of the state, it is considered as acting under the color of state law because it is performing a traditional state function in operating a state prison. *See Harding v. Core Civic*, No. 3-17-cv-01002, 2017 WL 3601712, at *2 (M.D. Tenn. Aug. 18, 2017).

[7] Unless indicated otherwise (as for example when particular facts are identified as being merely asserted by a party or otherwise qualified in some manner), the facts set forth in this section are undisputed.

officials improperly kept him in restrictive housing and deprived him of recreation, telephone privileges, and access to legal assistance. (*Id.*).

Plaintiff alleges that as he was leaving restrictive housing on December 13, 2018, Defendant Hudson cursed at him, referring to the dismissed disciplinary write-up, and then (along with other officers) physically attacked him. (*Id.* at 4–5). Plaintiff was then returned to restrictive housing, and Defendants Carter and Navarrette, allegedly acting at the instruction of Defendants Roach and Hudson, deprived Plaintiff of access to his personal property (for thirty days), showers (for twelve days), bedding (for three days), and food (for two days). (*Id.*). Defendant Hudson, on the other hand, contends that on the day of the alleged attack against Plaintiff, Plaintiff entered his office and began punching him unprovoked, and the TTCC Special Operations Response Team was called to restrain Plaintiff. (*Id.* at 5). Carter, Navarrette, Roach, and Hudson deny depriving Plaintiff of his personal property, showers, bedding, or food. (Doc. Nos. 190, 196, 197, 193).

Regarding his Sixth Amendment claim for access to counsel, Plaintiff accuses Fish of having purposely used an incorrect phone number to prevent Plaintiff from speaking with his attorney. (Doc. No. 210 at 28). Fish submitted a declaration denying this allegation. (Doc. No. 191).

Plaintiff also brings a claim for deliberate indifference to a serious medical need. (Doc. No. 210 at 33). Plaintiff has a medical restriction requiring him to be housed on the ground level and in the lower-level bunk. (*Id.* at 6). He alleges that on April 19, 2019, Defendant Roach moved Plaintiff from his cell on the ground-level to a higher-level cell, and while climbing the stairs to the higher-level cell, Plaintiff collapsed due to his medical condition. (*Id.*). Defendant Roach then allegedly carried Plaintiff to the higher-level cell. (Doc. No. 46 at 21–22). Plaintiff alleges that when he saw Defendant Jent in his cell later that morning, Jent refused Plaintiff medical assistance

despite Plaintiff's request and Plaintiff supposedly being in pain. (Doc. No. 210 at 6–7). Defendant Roach responded to Plaintiff's allegations by arguing that he was not aware of Plaintiff's medical restriction, and that he has no authority over housing assignments. (*Id.* at 7). Defendant Jent denies that he refused medical care to Plaintiff. (*Id.*).

Finally, Plaintiff brings claims of excessive force against Defendants Harmon and Jent. Plaintiff contends that Defendant Harmon joined Defendant Jent at Plaintiff's cell, and the pair leaned heavily against Plaintiff's hands, which were hanging out the food port of his cell, causing visible injuries. (*Id.*). Defendants Jent and Harmon assert that Plaintiff was blocking the food port with his tray, thereby creating a security risk, and that any force used was reasonable and necessary to restore control over Plaintiff and his cell. (*Id.* at 7–8).

The undersigned district judge conducted the initial screening of the amended complaint required by Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A and 42 U.S.C. § 1997e. (Doc. No. 14). As a result of that screening, some of Plaintiff's claims and some Defendants were dismissed, but other claims survived (against, of course, Defendants who were not dismissed). (Doc. No. 15). In the R&R, the Magistrate Judge aptly summarized as follows Plaintiff's surviving claims, all of which were still pending at the time of the R&R:

> In screening Tolson's amended complaint [the undersigned district judge] found that Tolson stated the following claims: excessive force claims against Jent and Harmon in their individual capacities related to their trapping Tolson's hands in his cell's food port; deliberate indifference to medical needs claims against Jent and Roach in their individual capacities for failing to provide medical assistance to Tolson for his injuries; conditions of confinement claims against Hudson, Roach, Carter, and Navarrette in their individual capacities for denying Tolson access to showers and food; a Sixth Amendment right to counsel claim against Greer Fish in her individual capacity for causing Tolson to miss telephone calls with his attorney; and a First Amendment retaliation claim against Hudson in his individual capacity based on the December 13, 2018 altercation.

(Doc. No. 210 at 8).

The Magistrate Judge recommended summary judgment in favor of Defendants on all claims. Specifically, the Magistrate Judge found that in light of the PLRA's exhaustion requirement, 42 U.S.C. 1997e(a), the respective applicable Defendants were entitled to summary judgment on the following claims due to Plaintiff's failure to administratively exhaust them: (a) his Eighth Amendment claim of deliberate indifference to a serious medical need against Defendant Jent; (b) his Eighth Amendment conditions of confinement claim against Defendants Hudson, Roach, Carter, and Navarrette; (c) his First Amendment retaliation claim against Defendant Hudson, and (d) his Sixth Amendment access-to-counsel claim against Defendant Fish.[8] (*Id.* at 27, 28–29).

The Magistrate Judge then turned to the remaining claims, which she found to have been administratively exhausted. As to Plaintiff's excessive force claims against Defendants Jent and Harmon, the Magistrate Judge found that Defendants had met their burden of showing the absence of a genuine issue of material fact as to whether the force used was excessive, and that Plaintiff failed to rebut Defendants' showing. (*Id.* at 32). Finally, the Magistrate Judge found that Defendant Roach had met his burden in showing no genuine issue of material fact as to whether he was aware of Plaintiff's medical condition, and that therefore summary judgment was warranted on Plaintiff's claim for deliberate indifference to his medical needs against Defendant Roach. (*Id.* at 32–36).

---

[8] As explained below, unlike the other claims as to which the Magistrate Judge found that Plaintiff failed to exhaust his administrative remedies, Plaintiff did submit a grievance at the prison with respect to his claim that Defendant Fish prevented him from accessing his counsel. (Doc. No. 195-3). However, Plaintiff did not appeal the grievance after it was returned to him following so-called "Level II" review at the prison, thus rendering his Sixth Amendment claim against Fish administratively unexhausted. (Doc. No. 210 at 28).

## DISCUSSION

### Objection 1

Plaintiff's first objection fails because it does not pertain to a finding or consideration of the Magistrate Judge contained in the R&R. Plaintiff asserts that the video footage provided by Defendants to the Court in response to the Court's order on September 24, 2021 (Doc. No. 139) is the incorrect footage, which renders the Defendants in contempt of the order. (Doc. No. 211). But Plaintiff does not tie this particular assertion to anything in the R&R. Therefore, this objection is procedurally deficient under Local Rule 72.02, which requires that objections "state with particularity the specific portions of the Magistrate Judge's report or proposed findings or recommendations to which an objection is made." M.D. Tenn. R. 72.02. Therefore, regardless of whether Defendants provided the proper video footage to Plaintiff under the order, Plaintiff's objection is procedurally improper and is overruled.

### Objection 2

Plaintiff next objects to the Magistrate Judge's consideration of whether TTCC's grievance procedures are adequate. (Doc. 211 at 3). Specifically, he asserts that the grievance procedure is a dead end, and that if the Court were to examine Plaintiff's grievances (filed on the record by Defendants), it would see that Defendants have failed to follow their own policies governing grievances. (*Id.* at 3–4). The Court construes Plaintiff's objection as taking issue with the portion of the R&R in which the Magistrate Judge found that Plaintiff did not administratively exhaust particular claims. As explained in the R&R, the PLRA requires prisoners to exhaust a prison's administrative remedies before bringing an action for those grievances under § 1983. *See Napier v. Laurel County, Ky.*, 636 F.3d 218, 222 (6th Cir. 2022) (citing 42 U.S.C. § 1997e(a)). However, "[i]nmates 'need exhaust only such administrative remedies as are available.'" *See Pierce v.*

*Rowland*, No. 20-5731, 2021 WL 3929549, at*3 (6th Cir. Sept. 2, 2021) (quoting *Ross v. Blake*, 578 U.S. 632, 136 (2016)). It is not enough for a plaintiff to demonstrate that an ostensibly available administrative procedure is unavailable, such that his or her grievance could not be administratively exhausted; he or she also must demonstrate "some affirmative efforts to comply with the administrative procedures before [the courts analyze] [] whether the facility rendered these remedies unavailable." *See Napier*, 636 F.3d at 223–224 (collecting cases).

The Magistrate Judge reviewed the record and determined that Plaintiff provided no evidence that he attempted to comply with the administrative procedures for his Eighth Amendment claim of deliberate indifference to a serious medical need against Defendant Jent, his Eighth Amendment conditions of confinement claim against Defendants Hudson, Roach, Carter, and Navarrette, or his First Amendment retaliation claim against Defendant Hudson. (Doc. No. 210 at 27). The Magistrate Judge further explained that the only mentions of grievances that touch on these issues are contained in Plaintiff's unverified complaint, which cannot be afforded evidentiary weight. (*Id.*). The Court has reviewed the record and agrees with the Magistrate Judge that Plaintiff has provided no evidence that he attempted to exhaust his administrative remedies with respect to these claims. Indeed, no grievances on the record relate to the incidents underlying these claims. Plaintiff also has not submitted along with his objections any evidence in support of the argument contained therein. Therefore, the Court agrees that Plaintiff failed to exhaust his administrative remedies with respect to his Eighth Amendment claim of deliberate indifference toward a serious medical need against Defendant Jent, his Eighth Amendment conditions of confinement claim against Defendants Hudson, Roach, Carter, and Navarrette, and his First Amendment retaliation claim against Defendant Hudson.

As for Plaintiff's Sixth Amendment access-to-counsel claim against Defendant Fish, the parties do not dispute that Plaintiff filed a grievance form. (*Id.* at 28, Doc. No. 195-3). However, after the grievance form was returned to Plaintiff (together with the decision to eschew relief for Plaintiff) following Level II review, Plaintiff chose not to appeal the outcome. (Doc. No. 210 at 28). Indeed, the grievance form clearly indicates that either Plaintiff or a person acting on his behalf marked an "x" in the space indicating a person does not wish to appeal the decision on the grievance. (Doc. No. 195-3 at 4). Plaintiff argues that he was unable to appeal because the grievance procedure is unavailable to him.[9] (Doc. No. 211 at 3). However, Plaintiff has provided no evidence to this effect, and the record reflects two occasions on which Plaintiff was able to appeal decisions regarding his grievances. (Doc. Nos. 195-4, 195-5). Therefore, the record reflects that Plaintiff failed to administratively exhaust his Sixth Amendment claim, and that the grievance procedure was available.

Finally, Plaintiff takes issue with the Magistrate Judge's discussion of a specific grievance form discussed in the R&R. On January 24, 2019, Plaintiff filed a grievance (Doc. No. 195-2) complaining that he had not been given a personal identification number ("PIN") to be used to access the telephones. (Doc. No. 210 at 19). Once the grievance form properly had been processed, it was returned with the decision not to offer Plaintiff relief, thereby leaving Plaintiff to decide whether to appeal the decision. (*Id.* at 20). The grievance form indicates that both the "yes" and "no" boxes were checked for whether Plaintiff wanted to file an appeal. (*Id.* at 20). Defendants state that no appeal was filed. (Doc. No. 195 at 3). In his objection, Plaintiff contends that he is "extremely competent," and "[o]bviously some negligent official checked both yes and no on the

---

[9] As the Magistrate Judge correctly points out, by filing this grievance Plaintiff made an affirmative effort to comply with the administrative grievance procedures. (Doc. No. 210 at 28–29). Plaintiff is therefore able to argue that the grievance procedure is unavailable to him, though the Court ultimately disagrees with him on this point.

appeal from trying to cover-up their violations by confusing the reader again….") (Doc. No. 211 at 4). While the Court is understanding of Plaintiff's complaints regarding the alleged conduct of prison officials in the handling of this grievance form, the January 24, 2019 grievance did not underlie any of his claims, and therefore it has no effect on the resolution of Defendants' motion for summary judgment. While the grievance describes Plaintiff's difficulties in using the phone to call his attorney, his Sixth Amendment access-to-counsel claim was properly tied to his January 31, 2019 grievance in which he accused Defendant Fish of denying him access to the phones to call his attorney. (Doc. 195-3). It appears that the Magistrate Judge included a discussion of the January 24, 2019 grievance in the R&R merely to provide a fulsome description of all of Plaintiff's grievances reflected in the record (irrespective of whether any particular grievance was implicated by any of the pending motions for summary judgment). Therefore, Plaintiff's grievance has no effect on his claim, and his objection is overruled.

**<u>Objection 3</u>**

Plaintiff objects to the Magistrate Judge's resolution of his claim of deliberate indifference of a serious medical need against Defendant Roach. (Doc. No. 211 at 5). As explained above, Plaintiff accuses Defendant Roach of moving him from a ground-level cell to a higher-level cell (*i.e.*, moving him up at least one flight of stairs) in violation of his medical restriction. (Doc. No. 210 at 6). Plaintiff allegedly collapsed while climbing the stairs because of his medical condition, after which Defendant Roach picked up Plaintiff and carried him the upstairs to his new cell. (Doc. No. 46 at 21–22). Later that same morning, Plaintiff requested medical assistance from Defendant Jent but was refused. (Doc. No. 210 at 7).

As the Magistrate Judge explained, when prisoners bring deliberate indifference claims, they must fulfill both an objective and subjective component. (Doc. No. 210 at 33); *see Dominguez*

*v. Correctional Medical Services*, 555 F.3d 543, 550 (6th Cir. 2009). In moving for summary judgment, Defendants argued that Plaintiff cannot establish the subjective component. (Doc. No. 210 at 34). In support of their argument, Defendants submitted a declaration from Defendant Roach in which he states that he "was not aware and did not have any involvement in [Plaintiff's] health classifications or medical restrictions," and that he was "not responsible for inmate housing assignments…."[10] (Doc. No. 197 at 2). Based on this evidence, and Plaintiff's lack of rebuttal evidence, the Magistrate Judge determined that Defendants had met their burden for summary judgment—*i.e.*, that Plaintiff would not be able to establish the subjective component of his deliberate indifference claim.

As discussed below, the Court ultimately concurs with the conclusion of the Magistrate Judge that based on the record, Plaintiff would not be able to fulfill the subjective component of the deliberate indifference standard. However, the Court notes at the outset that it does not agree entirely with the analysis contained in the R&R on this issue. Generally, a prisoner can fulfill the subjective component by demonstrating "facts which, if true, would show the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *See Dominguez*, 555 F.3d at 550 (internal quotations marks omitted). But as noted by the Sixth Circuit, "government officials do not readily admit [facts that would establish] the subjective component," and therefore the subjective component may be "demonstrate[d] in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *See id.* (internal quotation marks omitted). Moreover, it is not necessary that the official be aware of the *specific* medical risk

---

[10] The declarations of individual Defendants (Doc. Nos. 190–197) were filed with reference to Defendants' joint response in opposition to Plaintiff's motion for summary judgment. (Doc. No. 189).

suffered by the prisoner; the fact finder can draw the inference that the official was subjectively aware of *that* risk, if the prisoner can establish facts demonstrating that a reasonable official would have been aware of *a* serious medical risk. *See id.* (explaining it was "not necessary that [official] was specifically aware that [prisoner] could become a quadriplegic as a result of his condition, but rather, that the [official] knew that serious risks accompany heat-related illnesses and dehydration."). As discussed below, although the R&R properly sets forth the standard for the subjective component, it does not take the warranted step of determining whether a reasonable fact finder could draw the inference that the subjective component is met based on the facts presented on the record.

On summary judgment, the movant has the "initial responsibility of informing the district court of the basis of its motion and identifying those portions of" the record "which it believes demonstrate the absence of a genuine issue of material fact." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Defendants submitted, and the R&R relies on, Defendant Roach's affidavit in which he states that he "was not aware and did not have any involvement in [Plaintiff's] health classifications or medical restrictions," and that he was "not responsible for inmate housing assignments…." (Doc. No. 197 at 2). But under the governing standards for the subjective component, this evidence alone is insufficient to warrant summary judgment in favor of Defendants for Plaintiff's deliberate-indifference-to-a-serious-medical-need claim against Defendant Roach. Because a prisoner can demonstrate the subjective component by circumstantial evidence, and the movant-defendant bears the initial burden at summary judgment, a court ruling on summary judgment must review the facts and circumstances to determine whether the subjective component could be fulfilled through "inference from circumstantial evidence." *See e.g.*, *Dominguez*, 555 F.3d at 550 (weighing that nurse-defendant "should have been aware" of

high out-door temperature and lack of air conditioning in housing units in its analysis of whether nurse-defendant was deliberately indifferent to risk of heatstroke and other heat-related illnesses); *Reed v. Speck*, 508 Fed. App'x 415, 419–420 (6th Cir. 2012) (explaining that in addition to a lack of direct evidence that official knew of inmate's pre-existing medical condition, there was a lack circumstantial evidence of such knowledge because inmate did not "ask for medical assistance," the evidence showed that the inmate was "breathing, conscious, and communicative," and the inmate displayed no "outward signs of" requiring medical attention). Therefore, the Court must look at the record and determine whether a fact finder could have drawn the inference that Plaintiff was suffering a substantial risk of a serious medical need.

It is undisputed that Plaintiff had on file at TTCC a Class B Medical Restriction, which required him to be assigned to the cell on the first floor and to be given a lower-level bunk because of orthopedic problems.[11] (Doc. Nos. 210 at 7, 23-1 at 22). Likewise, Defendants have never directly disputed that Defendant Roach moved Plaintiff from his cell located on the ground floor to a cell on a higher floor and, in the process of doing so, required Plaintiff to climb a set of stairs. (Doc. No. 46 at 22). Plaintiff allegedly collapsed on the stairs, at which point Defendant Roach carried Plaintiff to the cell on the higher level. (*Id.*). Even viewing the facts in the light most favorable to Plaintiff, they are insufficient to permit a fact finder to draw the inference that Defendant Roach was subjectively aware of a substantial risk to Plaintiff of a serious medical need. Indeed, there is no direct evidence that Defendant Roach knew about Plaintiff's medical restriction. For example, Plaintiff provides no evidence that he or a member of the prison administration told Roach about Plaintiff's medical restriction either before Roach moved Plaintiff from his ground-level cell or after Plaintiff collapsed on the stairs. And while there is some circumstantial evidence,

---

[11] The medical restriction form is signed by a medical practitioner but is undated, and therefore it is unclear when Plaintiff received his medical restriction. (Doc. No. 23-1 at 22).

it is not sufficient to allow a reasonable fact finder to draw the inference that Defendant Roach was aware that Plaintiff was at a substantial risk of a serious medical need. True, Plaintiff's medical restriction was likely on file at the time of the incident, but even when Plaintiff collapsed on the stairs, Defendant Roach had no reason to believe it was because Plaintiff was suffering a medical event. Plaintiff does not allege in his complaint that he cried out in pain or otherwise indicated to Roach that he needed medical assistance. Therefore, even after Plaintiff collapsed, there was still no reason to believe that there was a substantial risk that Plaintiff was suffering a serious medical need when Defendant Roach carried Plaintiff to the higher-level cell.

In his objection, Plaintiff includes several allegations not previously contained in the complaint or in his summary judgment filings. He alleges that Defendants Roach and Hudson were told several times by nurses about Plaintiff's medical condition and that he must be housed on a ground-floor bunk, and that Plaintiff himself showed Defendants his medical form reflecting his condition. (Doc. No. 211 at 5–6). However, courts generally decline to consider new facts raised in a plaintiff's objections to a report and recommendation. *See e.g.*, *Norton v. Baker*, 2:21-cv-00084, 2021 WL 4128865, at *2 (E.D. Tenn. Sept. 9, 2021) ("[T]he Court declines to consider new facts raised in Plaintiff's Objections."); *Chapple v. Franklin County Sheriff's Officers FCCC 1&2*, 2:21-cv-05086, 2022 WL 16734656, at *5 n. 5 (S.D. Ohio Nov. 7, 2022) (declining to consider new facts raised in objections to magistrate's report but not contained in complaint). Thus, even though these new alleged facts certainly are relevant to the subjective component of the deliberate-indifference analysis, the Court declines to consider them because they were raised for the first time in Plaintiff's objections. Therefore, based on the evidence on the record, Defendants have met their burden as the summary judgment movant with respect to Plaintiff's Eighth Amendment claim against Defendant Roach for deliberate indifference to a serious medical need.

In other words, Defendants have established that a reasonable fact finder could not draw the inference from the facts and circumstances that Defendant Roach was aware of a substantial risk to Plaintiff of a serious medical need. For these reasons, Plaintiff's objection is overruled.

While Defendants have shown that Defendant Roach has was not subjectively aware of Plaintiff's medical restriction for purposes of summary judgment, the Court cannot help but express its concern with the overall circumstances regarding Defendant Roach moving Plaintiff from his ground-level cell. As the Court has noted several times, Plaintiff's medical restriction was on file at the prison, and Defendants do not directly dispute that Plaintiff was experiencing difficulties making it up the stairs to a higher-level cell. The Court is deeply troubled by the fact that a prison official, who is specifically moving an inmate from a ground-level cell to a higher-level cell, would not have been informed that the inmate had a specific medical restriction preventing the inmate from being housed in a higher-level cell, and that it would apparently be left up to the inmate to inform the official of his or her medical condition. While federal courts are often "reluctant to interfere with the internal administration of state prisoners," they will nevertheless "intervene to remedy unjustified violations of those rights retained by prisoners…." *See Williams v. Lane*, 851 F.2d 867, 871 (7th Cir. 1988). And though the Court has found that Defendants are entitled to summary judgment in this case, the Court can envision a scenario where the lack of communication in the prison administration regarding inmate medical restrictions could place another inmate in harm's way and could rise to the level of an unjustified violation warranting the Court's intervention. Ultimately, while prisons are "restrictive and even harsh," those operating prisons must ensure that they do not "violate basic standards of decency and humanity. In short, while the Eighth Amendment does not mandate comfortable prisons[,] [] neither does it permit inhumane ones." *See Madrid v. Gomez*, 889 F. Supp. 1146, 1245 (N.D. Cal.

1996) (internal quotation marks omitted). CoreCivic has taken on the role of performing a traditional state function by operating a state prison and therefore has the responsibility to provide conditions, staff, and access to medical care that are consistent with the constitutional rights of the inmates it has chosen to house for the term of their incarceration. The undersigned does not presume to run any prisons, but he believes that he is not speaking out of turn in suggesting that—even though Defendant Roach managed to prevail here based on the applicable record and applicable law—it would behoove CoreCivic to ensure transmission of a prisoner's relevant medical information to prison officers whose duties naturally would require them to know such information.

**<u>Objection 4</u>**

Plaintiff objects to the Magistrate Judge's reliance on Defendants Jent's and Harmon's denials that they used excessive force against Plaintiff when they attempted to restore Plaintiff to his cell after Plaintiff dangled his hands out of his food-port. (Doc. No. 211 at 7). Plaintiff asserts (i) that Jent's and Harmon's denials are not credible because they are self-interested, and (ii) that Jent and Harmon offered "no proof whatsoever" other than these denials. (*Id.*).

The former assertion, however, is inapt at this particular stage of the litigation. Courts cannot make credibility determinations on motions for summary judgment. *See Snead v. Nationwide Property and Cas. Ins. Co.*, 653 F. Supp. 2d 823, 826 (W.D. Tenn. 2009) ("[In reviewing a motion for summary judgment] [t]he judge may not make credibility determinations or weigh the evidence."). And the latter assertion is incorrect because Jent and Harmon have not offered mere unsupported, conclusory denials. Contrary to Plaintiff's assertion that Defendants have not submitted poof in support of these denials, Defendants Jent and Harmon have submitted sworn affidavits in which they describe the incident with the food-port and attest that the respective

affiant only used the force reasonable and necessary to eliminate the security risk they perceived Plaintiff as creating. (Doc. Nos. 192, 194). The Magistrate Judge was therefore correct to rely on these affidavits in determining that Jent and Harmon had met their preliminary burden as the summary-judgment movants, thus shifting the burden to Plaintiff to provide evidence to put the veracity of the affidavits into genuine dispute. And Plaintiff has failed to meet that resulting burden; in his objections, Plaintiff provides no evidence to support his allegations that Defendants Jent's and Harmon's statements in their respective affidavits are not credible. Therefore, the Magistrate Judge properly found that Defendants have met their burden of showing that there is no genuine dispute of material fact that Defendants Jent and Harmon did not use excessive force. Plaintiff's objection is thus overruled.

**Objection 5**

Plaintiff objects to the Magistrate Judge's resolution of his Sixth Amendment access-to-counsel claim. (Doc. No. 211 at 8). Plaintiff argues that the facts he has asserted his objections and pleadings demonstrate that Defendant Fish denied him access to the phones in a variety of ways, which in turn prevented him from contacting his attorney. (*Id.*). He accuses Defendant Fish of providing "no evidence whatsoever" of contradicting his assertions, other than her "self-asserted denials." (*Id.*). However, as discussed above, because Plaintiff did not administratively exhaust his Sixth Amendment claim against Defendant Fish, the Court need not reach the issue of whether there remains a genuine dispute of material fact as to the underlying claim. Plaintiff's objection is thus overruled, and the Court agrees with the Magistrate Judge that summary judgment is proper on the grounds that Defendants have met their burden with respect to showing that Plaintiff failed to exhaust his administrative remedies.

CONCLUSION

For the reasons discussed herein, Plaintiff's objections are overruled, and the Court adopts the Magistrate Judge's Report and Recommendation (except insofar as the Court modified the analysis of the deliberate-indifference claim against Defendant Roach as explained above). (Doc. No. 210). Accordingly, the Defendants' motion for summary judgment (Doc. No. 201) is **GRANTED**,[12] and Plaintiff's motions for summary judgment (Doc. Nos. 172, 185) are **DENIED**[13].

This is the final order in this case. All relief being denied, the Clerk of the Court is ordered to enter final judgment under Federal Rule of Civil Procedure 58.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[12] As noted above, several of Plaintiff's claims are being disposed of for failure to exhaust administrative remedies. And as also noted, the nature of that disposition is *summary judgment* (as requested by Defendants), and not mere dismissal (whether with or without prejudice). One might reasonably ask whether summary judgment (as opposed to dismissal) is the appropriate disposition in the case of a failure to administratively exhaust. The Sixth Circuit recent indicate that indeed it is. *See Lamb v. Kendrick*, 52 F.4th 286, 292 (6th Cir. 2022) ("Because an inmate's failure to exhaust his administrative remedies is an affirmative defense (not a jurisdictional requirement) that the defendants have the burden to plead and prove by a preponderance of the evidence, '[a] district court should grant summary judgment only if a defendant establishes that there is no genuine dispute of material fact that the plaintiff failed to exhaust.'" (quoting *Does 8-10 v. Snyder*, 945 F.3d 951, 961 (6th Cir. 2019) (citation omitted))). And in any event, Plaintiff does not object to the R&R's recommendation that the undersigned grant summary judgment (as opposed to ordering dismissal).

[13] Denial of Plaintiff's motion for summary judgment is also proper on the grounds that he has failed to comply with the Court's local rules. For example, it violates multiple requirements of Local Rule 7.01(a)(2) and Local Rule 56.01(b), including the requirement to file a separate memorandum in support of the motion and to provide specific citation to the report to support each factual assertion in the statement of undisputed material facts. Though the Court is cognizant of Plaintiff's *pro se* status, the Court is nonetheless responsible for ensuring litigants' compliance with the local rules. And in any event, Plaintiff makes no specific objections to the Magistrate Judge's denial of his motion for summary judgment on these grounds.